**George MATTINGLY, d/b/a Harbor Mechanical, Appellant,**

**v.**

**SHELDON JACKSON COLLEGE, an Alaska not-for-profit corporation, Arthur Dorland, Jim Biggs and John Doe, Appellees.**

**No. S–1574.**

Supreme Court of Alaska.

Oct. 9, 1987.

---

Denton J. Pearson, Scavron & Pearson, Sitka, for appellant.

Michael L. Lessmeier and John G. Frank, Hughes, Thorsness, Gantz, Powell & Brundin, Juneau, for appellees.

## OPINION

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

MATTHEWS, Justice.

This appeal is from an employer's action against Sheldon Jackson College for alleged willful, reckless, and negligent conduct which resulted in injury to the employer's employees and his business. The employer, George Mattingly, seeks damages for loss of income and profits suffered as a result of the loss of his employees' services, expenses incurred for medical care and hospitalization of his employees, damages for his own emotional distress, and punitive damages. The superior court granted the

College's motion for judgment on the pleadings pursuant to Civil Rule 12(c) and 12(b)(6) on the ground that the complaint failed to allege a cause of action, and dismissed the complaint.

We conclude that Mattingly's complaint sets forth sufficient allegations to state a cause of action for negligently caused economic injury to a particularly foreseeable plaintiff. We therefore reverse the superior court's dismissal of Mattingly's complaint and remand for further proceedings on that cause of action. We affirm the superior court's decision as to the remainder of the causes of action which Mattingly asserted.

## I. FACTS AND PROCEEDINGS

At the time the cause of action arose, George Mattingly was engaged in a drain cleaning, sewage pumping, and fire protection system enterprise, doing business under the name of Harbor Mechanical and Fire Protection in Sitka and Ketchikan. On April 18, 1983, Sheldon Jackson College contacted Harbor Mechanical to have a drain pipe cleaned on the College campus. Thomas Mattingly, plaintiff's son and an employee of Harbor Mechanical, and two other employees were dispatched to the College to clean the drain pipe.

Three of Sheldon Jackson's employees, also defendants/appellees, excavated and braced a trench to expose the drain pipe so that Mattingly's employees could perform their work. The trench subsequently collapsed on the three Harbor Mechanical employees, completely burying one and partially burying the other two. The three men were taken to the hospital for medical treatment.

Mattingly alleges that his three employees suffered serious physical and psychological injuries. He further alleges that he took time away from his duties as general manager of Harbor Mechanical in Ketchikan to come to Sitka to be by the side of his injured son and employees. He claims that he himself suffered considerable physical and emotional trauma as a consequence of the stress associated with assisting his injured employees and meeting the demands of continuing the business without their help. He further claims that he temporarily lost the services of his son and one employee, that he permanently lost the services of the other employee, and thereby lost business, business reputation and income, and incurred expenses for the medical care and treatment of his employees.

The College moved for judgment on the pleadings. Oral argument was heard on the motion, at which time the superior court permitted Mattingly to file an amended complaint to allege additional facts.

Mattingly's amended complaint is set forth in six counts. As the superior court explained, "[c]ounts 1, 2, 3, and 5 allege as a cause of action willful, reckless, and negligent interference by the defendants with the contractual relations of plaintiff with his employees and his customers." The court found that Mattingly relied on a tort theory rather than on his contract with the College, and held that there is no authority for a cause of action for negligent interference with contractual expectations or relations. The court further held that the facts alleged in the amended complaint did not support the allegation that the College intended to interfere with Mattingly's business opportunities. Therefore, the court held that Mattingly had failed to state a cause of action based on either negligent or intentional interference with his business opportunities, and dismissed counts 1, 2, 3, and 5.

The court further found that count 4 alleged the tort of emotional distress caused by the College's willful, reckless, and negligent conduct, and that count 6 alleged that the College's actions were willful, wanton, knowing, and intentional, thereby justifying an award of punitive damages. The court held that "[a]s to conduct not in the plaintiff's presence, emotional damages must be based on conduct of such a nature that a finding of malice must be made." The court concluded that Mattingly failed to plead anything which would support such a finding, and therefore dismissed counts 4 and 6.

## II. DISCUSSION

### A. *Standard of Review*

A motion to dismiss for failure to state a claim is viewed with disfavor and should rarely be granted. *Knight v. American Guard & Alert, Inc.*, 714 P.2d 788, 791 (Alaska 1986) (citing 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1357, at 598 (1969)). "In determining the sufficiency of the stated claim it is enough that the complaint set forth allegations of fact consistent with and appropriate to *some enforceable cause of action.*" *Linck v. Barokas & Martin*, 667 P.2d 171, 173 (Alaska 1983) (emphasis added). "[T]he court is under a duty to examine the complaint to determine if the allegations provide for relief *on any possible theory.*" *Knight*, 714 P.2d at 791 (citing 5 C. Wright & A. Miller, *supra*, at 602, emphasis added).

### B. *Cause of Action for Economic Loss Damages Despite Lack of Physical Harm or Injury*

Mattingly argues that the superior court did not consider all possible grounds for the College's liability in negligence before it dismissed his complaint for failure to state a cause of action. Specifically, Mattingly contends that the foreseeable risk of harm to his business should a cave-in occur gave rise to a duty on the part of the College to take reasonable precautions in the excavation and bracing of the trench. Mattingly relies in part on *People Express Airlines, Inc. v. Consolidated Rail Corp.*, 100 N.J. 246, 495 A.2d 107 (1985), in which the New Jersey Supreme Court addressed as a question of first impression whether negligent conduct that interferes with a party's business resulting in purely economic loss without property damage or personal injury is compensable in tort. The court held that economic loss damages are recoverable despite a lack of physical damages or injury if suffered by persons in businesses comprising an identifiable class whom the defendant knows or has reason to know are likely to suffer damages. We are persuaded by the approach of the New Jersey Supreme Court and set forth its analysis in some detail.

In *People Express*, a commercial airline was forced to evacuate its premises and suffered interruption of its business operations as a result of the defendants' negligent acts in allowing a dangerous chemical to escape from a nearby railway car. People Express asserted that it suffered business interruption losses as a result of the evacuation, but there was no property damage or physical injury associated with its economic losses. The court was principally concerned with the fact that People Express suffered no physical harm or property damage.

The single characteristic that distinguishes parties in negligence suits whose claims for economic losses have been regularly denied by American and English courts from those who have recovered economic losses is, with respect to the successful claimants, the fortuitous occurrence of physical harm or property damage, however slight. It is well-accepted that a defendant who negligently injures a plaintiff or his property may be liable for all proximately caused harm, including economic losses. *See Palsgraf v. Long Island R.R.*, 248 N.Y. 339, 163 N.E. 99 (1928); W. Prosser & W. Keeton, *The Law of Torts* § 129, at 997 (5th ed. 1984).... Nevertheless, a virtually *per se* rule barring recovery for economic loss unless the negligent conduct also caused physical harm has evolved throughout this century....

495 A.2d at 109 (citations omitted).

The court examined the reasons for the divergent results for litigants seeking economic losses, such as the necessity to limit damages to reasonably foreseeable consequences of negligent conduct, and the fear of fraudulent claims, mass litigation, and limitless liability or liability out of proportion to the defendant's fault. *Id.* at 110. Although these concerns are valid, the court found that they support only a limitation on, not a denial of, liability.

The answer to the allegation of unchecked liability is not the judicial obstruction of a fairly grounded claim for redress. Rather, it must be a more sedulous application of traditional concepts of

duty and proximate causation to the facts of each case.

... The physical harm requirement capriciously showers compensation along the path of physical destruction, regardless of the status or circumstances of individual claimants. Purely economic losses are borne by innocent victims, who may not be able to absorb their losses.... In the end, the challenge is to fashion a rule that limits liability but permits adjudication of meritorious claims.

*Id.* at 111. As to concerns of fraudulent or baseless claims, another court has stated that "[h]ere, as elsewhere, the answer must be that courts have some expertise in performing their almost daily task of distinguishing the honest from the collusive or fraudulent claim." *Petition of Kinsman Transit Co.*, 388 F.2d 821, 823 (2d Cir.1968). Finally, even in negligence suits involving property damage or physical harm, courts have recognized that a tortfeasor is not necessarily liable for all consequences of his conduct.

Some limitation is required; that limitation is the rule that a tortfeasor is liable only for that harm that he proximately caused. Proximate or legal cause has traditionally functioned to limit liability for negligent conduct. Duty has also been narrowly defined to limit liability. Compare the majority and dissenting opinions in *Palsgraf v. Long Island R.R.*, *supra*, 248 N.Y. 339, 162 N.E. 99. Thus, we proceed from the premise that principles of duty and proximate cause are instrumental in limiting the amount of litigation and extent of liability in cases in which no physical harm occurs just as they are in cases involving physical injury.

*People Express*, 495 A.2d at 110.

Moreover, judicial reluctance to allow recovery for purely economic losses is discordant with contemporary tort doctrine.

The tort process, like the law itself, is a human institution designed to accomplish certain social objectives. One objective is to ensure that innocent victims have avenues of legal redress, absent a contrary, overriding public policy.... This reflects the overarching purpose of tort law: that wronged persons should be compensated for their injuries and that those responsible for the wrong should bear the cost of their tortious conduct.

*Id.* at 111 (citations omitted).

■ We agree with the foregoing and therefore hold· that

[A] defendant owes a duty of care to take reasonable measures to avoid the risk of causing economic damages, aside from physical injury [or property damage], to particular plaintiffs or plaintiffs comprising an identifiable class with respect to whom defendant knows or has reason to know are likely to suffer such damages from its conduct. A defendant failing to adhere to this duty of care may be found liable for such economic damages proximately caused by its breach of duty.

*Id.* at 116. In adopting a rule permitting recovery for purely economic losses, we emphasize the role of foreseeability as it relates both to the duty owed and to proximate cause. "The traditional test of negligence is what a reasonably prudent person would foresee and do in the circumstances; duty is clearly defined by knowledge of the risk of harm or the reasonable apprehension of that risk." *Id.* at 115.

■ In cases where plaintiffs may successfully recover for purely economic harm, it must be shown that

the defendants knew or reasonably should have foreseen both that particular plaintiffs or an identifiable class of plaintiffs were at risk and that ascertainable economic damages would ensue from the conduct. Thus, knowledge or special reason to know of the consequences of the tortious conduct in terms of the persons likely to be victimized and the nature of the damages likely to be suffered will suffice to impose a duty upon the tortfeasor not to interfere with economic well-being of third parties.

*Id.* Further, the extent of liability and degree of foreseeability stand in direct proportion to one another. The more particular the foreseeability that economic loss will be suffered by the plaintiff as a result

of defendant's negligence, the more just it is that liability be imposed and recovery allowed.

We stress that an identifiable class of plaintiffs is not simply a foreseeable class of plaintiffs. For example, members of the general public, or invitees such as sales and service persons at a particular plaintiff's business premises, or persons travelling on a highway near the scene of a negligently-caused accident ... who are delayed in the conduct of their affairs and suffer varied economic losses, are certainly a foreseeable class of plaintiffs. Yet their presence within the area would be fortuitous, and the particular type of economic injury that could be suffered by such persons would be hopelessly unpredictable and not realistically foreseeable. Thus, the class itself would not be sufficiently ascertainable. *An identifiable class of plaintiffs must be particularly foreseeable in terms of the type of persons or entities comprising the class, the certainty or predictability of their presence, the approximate numbers of those in the class, as well as the type of economic expectations disrupted.*

*Id.* at 116 (emphasis added).

In this context, those economic losses are recoverable as damages when they are the natural and probable consequence of a defendant's negligence in the sense that they are reasonably to be anticipated in view of defendant's capacity to have foreseen that the particular plaintiff or identifiable class of plaintiffs ... is demonstrably within the risk created by defendant's negligence.

*Id.* at 118.

■ Turning to the case at bar, we are satisfied that Mattingly has set forth a cause of action and is entitled to have the matter proceed on the issue of negligently caused economic losses, if any. Losses of business income and profit and increases in expenses were pled. Mattingly maintained that the College had a duty to refrain from conduct which would foreseeably interfere with his ability to conduct his business. He is certainly a foreseeable and particularized plaintiff—the trench was dug so that his employees could work in it—who might predictably suffer economic losses if the College negligently caused harm to his business. Mattingly still faces a difficult task in proving his damages, particularly lost profits, to the degree of certainty required in negligence cases. He will also have to demonstrate that he could not have reasonably replaced his injured employees and thereby continued his business.

## C. *Employer's Right of Action for Loss of Service Against Third Person Tortiously Injuring Employees*

### 1. *Negligent Interference with Contract or Business Relations*

■ Apart from his claim for negligently caused economic losses, Mattingly argues that the College's conduct supports a cause of action for negligent interference with his relationships with his employees. The superior court examined Mattingly's first, second, third, and fifth counts, and stated:

The duty owed by defendants to plaintiff is the first concern to be analyzed.... Sheldon Jackson College owes a duty, under tort law, to plaintiff, not to intentionally disrupt the relationship between plaintiff and his employees and customers, present, and future. *Ellis v. Valdez*, 686 P.2d 700, 706 (Alaska 1984). *Long v. Newby*, 488 P.2d 719 (Alaska 1971). Plaintiff has alleged disruption of expected opportunities, not currently valid contracts. In *Ellis*, the Alaska Supreme Court recognized the tort of intentional interference with prospective economic advantage....

Turning to the allegation of negligence, there is no authority cited by plaintiff that would establish that this duty owed by Sheldon Jackson College to plaintiff is breached by general negligence.... Thus, no recovery can be had by plaintiff on an allegation of negligence.

We agree.

Under the rule at common law, an employer was entitled to maintain an action

against a third person to recover damages on account of losses sustained by reason of an injury to an employee caused by the third person. The authorities supporting the common law rule are generally dated, however, and the cases have been distinguished or rejected.[1] One writer offers the following criticism of the common law rule:

> [T]he statement continues to be made in various treatises that a master has a cause of action for negligent harm to his servant. These statements are in large measure based upon the admitted earlier rules. The modern authority, however, is so slight as to be almost non-existent.... I have found only four square decisions in the United States in the last century and a half which support the rule.

Seavey, *Liability to Master for Negligent Harm to Servant*, 1956 Wash. U.L.Q. 309, 311 (citing *Woodward, Coal Land, Darmour,* and *Jones (discussed in* note 1 *supra )); accord Snow v. West,* 250 Or. 114, 440 P.2d 864, 865 (1968) ("We have examined the American cases cited by the parties and cited in the various texts and the articles upon the subject and we have found no decision of the highest court of any jurisdiction holding that an employer

can recover for profits lost because of a negligent injury to an ordinary employee."). Thus, the modern authorities uniformly hold that an employer is not entitled to recover damages against a third person for loss of services or profits resulting from injuries to an employee negligently caused by the third person. Many of these cases do hold, however, that an employer may recover for loss of an employee's services if the employee was intentionally harmed by an act of a third person.[2]

Although we have not yet directly addressed the question whether an employer may recover for a third person's negligent injury to an employee, or for negligent interference with the employer's contract with its employees or its prospective economic advantage, several Alaska cases may be read to limit an employer's right of action to intentional interference. In *Long v. Newby,* 488 P.2d 719 (Alaska 1971), we joined the majority of American jurisdictions in recognizing the tort of intentional interference with contractual relations. In *Ellis v. City of Valdez,* 686 P.2d 700 (Alaska 1984), the tort of intentional interference with prospective economic advantage was recognized for the first time in Alaska. We explained that

1. *Woodward v. Washburn,* 3 Denio 269 (N.Y. Sup.Ct.1846), *distinguished by Ferguson v. Green Island Contracting Corp.,* 44 A.D.2d 358, 355 N.Y.S.2d 196 (N.Y.1974), *aff'd,* 36 N.Y.2d 742, 368 N.Y.S.2d 163, 328 N.E.2d 792 (1975) (*Woodward* involved intentional tort, *Ferguson* involved only negligent injury which was held not actionable); *Coal Land Dev. Co. v. Chidester,* 86 W.Va. 561, 103 S.E. 923 (1920), *distinguished by Nemo Found., Inc. v. New River Co.,* 155 W.Va. 149, 181 S.E.2d 687, 690 (1971) (*Coal Land* involved intentional injury, *Nemo* involved only negligent injury which was not held actionable); *Darmour Prod. Corp. v. Herbert M. Baruch Corp.,* 135 Cal.App. 351, 27 P.2d 664 (1933), *distinguished by Sharfman v. State,* 253 Cal. App.2d 333, 61 Cal.Rptr. 266, 269 (1967) (*Darmour* based on California statute defining status of master and servant, *Sharfman* involved contractual agreement defining rights and obligations of injured partner, and courts have consistently refused to recognize cause of action based upon negligent, as opposed to intentional, conduct interfering with performance of contract); *Jones v. Waterman S.S. Corp.,* 155 F.2d 992, 1000 (3d Cir.1946) (applying Pennsylvania law), *rejected as dictum by Gramby v. Philadelphia Transp. Co.,* 22 Pa.D. & C.2d 366 (1960) (as

reported in 4 A.L.R. 4th 504, 515–16); *see generally* Annotation, *Employer's Right of Action for Loss of Services or the Like Against Third Person Tortiously Killing or Injuring Employee,* 4 A.L.R. 4th 504 (1981); 53 Am.Jur.2d *Master and Servant* § 402 (1970 and Supp.1985).

2. In addition to the cases distinguishing the older authorities cited *supra* note 1, see *Steele v. J & S Metals, Inc.,* 32 Conn.Supp. 17, 335 A.2d 629 (1974); *Ireland Elec. Corp. v. Georgia Highway Express, Inc.,* 166 Ga.App. 150, 303 S.E.2d 497 (1983); *Chelsea Moving & Trucking Co. v. Ross Towboat Co.,* 280 Mass. 282, 182 N.E. 477 (1932); *B.V. Merrow Co. v. Stephenson,* 102 Mich.App. 63, 300 N.W.2d 734 (1980); *Frank Horton & Co. v. Diggs,* 544 S.W.2d 313 (Mo.App. 1976); *Myrurgia Perfumes, Inc. v. American Airlines, Inc.,* 68 Misc.2d 712, 327 N.Y.S.2d 861 (N.Y.Civ.Ct.1971); *Snow v. West,* 250 Or. 114, 440 P.2d 864 (1968); *Philadelphia v. Philadelphia Rapid Transit Co.,* 337 Pa. 1, 10 A.2d 434 (1940); *Hartridge v. State Farm Mutual Auto. Ins. Co.,* 86 Wis.2d 1, 271 N.W.2d 598, 601 (1978) (the common law rule "is out of place in modern times" and is "ill-adapted to current social and economic realities").

the individual's expectation of a fair opportunity to conduct legitimate business affairs free from wrongful intermeddling by others, is also widely protected in American jurisdictions, through the tort of intentional interference with prospective economic advantage. Under this theory, a person who is involved in an economic relationship with another, or who is pursuing reasonable and legitimate prospects of entering such a relationship, is protected from a third person's wrongful conduct *which is intended to disrupt the relationship.*

*Id.* at 707 (emphasis added). Even assuming that Mattingly's complaint may be liberally construed to make out a claim for interference with his employee relations and prospective economic advantage, nowhere in *Long* or *Ellis* did we hint that negligent interference would support a cause of action.

We now adopt the modern rule that employers may not recover simply for the loss of their employees' services or for loss of profits arising from the negligent injury of their employees by a third person. Of course, a defendant's negligent injury of an employer's employee may be relevant to the employer's cause of action for negligently caused economic losses. Thus, although an employer may not recover under a theory of loss of profits or employee services due to an employee's negligent injury by a third party, the employer might, as in this case, state a cause of action for negligently caused economic loss as discussed in part II.B of this opinion.

### 2. *Intentional Interference with Contract and Economic Relations*

Mattingly next asserts that the superior court erred in dismissing his claim for intentional interference with his contracts with his employees, and for intentional interference with his prospective economic relations. He argues that the superior court erroneously held, in effect, that the level of intent required by *Long,* 488 P.2d at 722 (intentional interference with contractual relations) and *Ellis,* 686 P.2d at 706 (intentional interference with prospective economic advantage) is specific intent. Mattingly contends that the appropriate rule is that all persons are subject to a duty not to harm another as a result of outrageous or malicious acts, or acts done with reckless indifference (citing *Zeman v. Lufthansa German Airlines,* 699 P.2d 1274 (Alaska 1985)), and that an actor is presumed to have intended the harm if it is a natural and probable result of a voluntary act. He argues that because his complaint alleged that the College's conduct was "willful" and "reckless," such conduct rises to "outrageous or indifferent behavior" and further "to a level of neglect equalling intent."

The superior court found that the intent alleged in the complaint focuses

on the injury to the employees, which in turn would interfere with [Mattingly's] contractual relationships. These allegations are not sufficient to support a tort which requires an intent to harm a business relationship. The *Ellis* tort does not contemplate business harm inflicted as a collateral effect of a tort against an employee.... There is no hint in the amended complaint that defendants intended to interfere with plaintiff's business opportunities.

Mattingly's complaint does not allege facts which indicate any intent on the College's part to interfere with Mattingly's relations with his employees or with his prospective economic advantage. Moreover, Mattingly's allegations do not express or imply any conduct on the part of the College which rises to a level of outrageousness.

An employer is required to allege some definite, specific, or knowing intent on the part of a third person to do harm to the employer's contractual relations with its employees, or with its prospective economic advantage, in order to state a cause of action under *Long* or *Ellis.* In *Knight v. American Guard & Alert, Inc.,* we set out as one of the elements of the cause of action for the tort of intentional interference with another's contract proof that "defendant ... knew of the contract and intended to induce a breach." 714 P.2d at

793. To the same effect is the Oregon Supreme Court's ruling: "To be actionable an interference must be knowing and not an inadvertent or incidental invasion of plaintiff's contractual interests." *Snow v. West*, 440 P.2d at 865 (citation omitted); *see also Steele v. J. & S. Metals, Inc.*, 335 A.2d at 630 (Connecticut court rejects plaintiff's attempt to distinguish recent decisions requiring intentional invasion of employer's contractual interests on the basis that defendants knew that injured employee was a "key employee" and that foreseeability of harm to employer was established. The court wrote: "We do not feel that mere knowledge by the defendants of such a business relationship between plaintiffs is sufficient to create liability for the alleged losses sustained by the employer"). We therefore affirm the superior court's decision that Mattingly's complaint does not state a cause of action for intentional interference with contractual or economic relations.

### D. *Infliction of Emotional Distress and Punitive Damages*

Mattingly's amended complaint asserted as its fourth count a cause of action for the infliction of emotional distress. The complaint alleged that as a result of the College's "willful, reckless, and negligent" conduct, Mattingly suffered "severe and extreme emotional distress" arising "as an incident to the physical and emotional injury" to his son and other employees, and that as a result of Mattingly's emotional distress, he "has been prevented from transacting his business, lost earnings, lost employee services, had increases in business expenses, suffered great anguish of mind and pain of body and incurred expenses for treatment and hospitalization of his representatives and employees." The sixth count alleged that the College's conduct was "willful, wanton, knowing and intentional, thereby making appropriate the imposition of punitive damages."

The superior court held that

[d]amages for emotional distress have required either (1) that the plaintiff have been present and to have observed the harm inflicted, *e.g.*, *Deboe v. Horn*, [16 Cal.App.3d 221], 94 Cal.Rptr. 77 (Cal. App.1971), or (2) that the conduct of the defendant be extreme and outrageous, i.e. the harm was caused intentionally or recklessly, *e.g.*, *Richardson v. Fairbanks North Star Borough*, 705 P.2d 454 (Alaska 1985).

The court cited *Richardson* for the proposition that to sustain emotional distress damages, the conduct of the defendant should be compared to that which would support a punitive damages award. The court then cited *Alyeska Pipeline Service Co. v. O'Kelley*, 645 P.2d 767 (Alaska 1982), explaining that punitive damages should be based upon conduct which is found to imply actual malice. The court concluded that because the College's conduct causing injury to Mattingly's employees did not occur in his presence, damages for emotional distress and punitive damages "must be based on conduct of such a nature that a finding of malice must be made." Because the court found that, even drawing all reasonable inferences in his favor, Mattingly had failed to plead anything which would support such a finding, it dismissed counts four and six.

■ Regarding Mattingly's claims for intentional infliction of emotional distress and punitive damages, the superior court correctly ruled that Mattingly did not allege anything which, construed liberally, would support a finding of intentional, reckless, extreme, outrageous, or malicious conduct which would give rise to damages for intentional infliction of emotional distress, *see Richardson*, 705 P.2d at 456 (adopting elements of Restatement (Second) of Torts § 46 (1965)), or punitive damages, *see*, *Alyeska Pipeline Serv. Co. v. O'Kelley*, 645 P.2d at 773–74.

■ In addressing Mattingly's claim for damages for negligent infliction of emotional distress, the court rejected Mattingly's argument that special geographical concerns justify extension of the rule requiring that the injury occur in the plaintiff's presence. The court held that geographical concerns were not consistent with the policy of law to limit the tort of

negligent infliction of emotional distress to an event causing injury within the plaintiff's presence.

The court's decision was filed before we issued our opinion in *Tommy's Elbow Room v. Kavorkian,* 727 P.2d 1038 (Alaska 1986), which adopted a test for claims alleging negligent infliction of emotional distress. In *Kavorkian,* we rejected the "zone of danger" test of the Restatement (Second) of Torts § 313 (1965), and adopted instead an interpretation of the guidelines set forth in *Dillon v. Legg,* 68 Cal.2d 728, 69 Cal.Rptr. 72, 80, 441 P.2d 912, 920 (1968):

> (1) Whether plaintiff was located near the scene of the accident as contrasted with one who was a distance away from it. (2) Whether the shock resulted from a direct emotional impact upon plaintiff from the sensory and contemporaneous observance of the accident, as contrasted with learning of the accident from others after its occurrence. (3) Whether the plaintiff and the victim were closely related, as contrasted with an absence of any relationship or the presence of only a distant relationship.

*Id.* at 1041. We rejected the "rigid requirement of sensory and contemporaneous observance of the accident," looking instead to "the reasonable foreseeability that the plaintiff-witness would suffer emotional harm." *Id.* at 1043.

In *Kavorkian,* an intoxicated driver struck the car in which the plaintiff's daughter was a passenger. On his way home the plaintiff observed the accident, but did not know his daughter was involved. Upon his arrival home the plaintiff found his daughter missing and went back to the scene of the accident, where he saw police and medical technicians attempting to remove his injured daughter from the car. The father brought an action against the tavern that had served drinks to the intoxicated driver, seeking damages for negligent infliction of emotional distress. We noted that "[u]pon arriving at the scene, ... he perceived and suffered shock from observing his child's injury.... We cannot say as a matter of law that it was

not reasonably foreseeable that he would appear at the scene of the accident." *Id.*

In rejecting a rigid interpretation of the second part of the *Dillon* guidelines, which requires that the plaintiff's shock result from a direct emotional impact from the sensory and contemporaneous observance of the accident, we did not address the first requirement that the plaintiff be near the accident scene. We observed that other states are increasingly permitting recovery for emotional distress in situations where the *Dillon* guidelines are not explicitly satisfied. *Id.* at 1042 n. 4. We cited as an example *Ferriter v. Daniel O'Connell's Sons, Inc.,* 381 Mass. 507, 413 N.E.2d 690 (1980), which permitted recovery by a mother and her children for emotional distress resulting from the sight of the husband-father in a hospital after he had sustained quadriplegic injuries in a work-related accident. We quoted from the Massachusetts Supreme Judicial Court's opinion that "[a] plaintiff who rushes onto the accident scene and finds a loved one injured has no greater entitlement to compensation for that shock than a plaintiff who rushes instead to the hospital. So long as the shock follows closely on the heels of the accident, the two types of injury are equally foreseeable." 727 P.2d at 1042 n. 4 (quoting 413 N.E.2d at 697).

■■■ In this case Mattingly cannot meet the *Dillon* guidelines even as interpreted in *Kavorkian.* Mattingly was located in Ketchikan when he learned of the accident in Sitka. Under the first part of the *Dillon* guidelines, it cannot be said that Mattingly "was located near the scene of the accident" but rather "was a distance away from it." *Id.* at 1041. We agree with the superior court that Alaska's special geographical concerns play no role in the analysis. Moreover, it cannot be said that the shock of observing his injured son and employees followed "closely on the heels of the accident." Although we have departed from a requirement that a plaintiff suffer direct emotional impact from sensory and contemporaneous observance of the accident, there remains a requirement that the shock result more or less contemporaneous-

ly with the plaintiff's learning of the nature of the victim's injury.[3] Here, Mattingly was more than 150 miles away from the accident scene and had time to steel himself during his flight to Sitka. There was no sudden sensory observation of his injured son. We therefore affirm the superior court's decision that Mattingly does not state a cause of action for negligently inflicted emotional distress.

### E. *Dismissal Against Non-moving Party*

■ Mattingly's original complaint named the College, Arthur Dorland, Jim Gibb, and John Doe as defendants. The individuals were alleged to be employees or representatives of the College who were involved in excavating the trench. The College and Dorland (both represented by the same counsel) answered, however, their answer did not include Gibb's name. The College and Dorland then made a motion for judgment on the pleadings and for dismissal, but again, Gibb's name was not included. Several days later, Gibb filed his answer through the College's counsel. Oral argument was heard on the motion for judgment on the pleadings, at which all defendants were represented by the same counsel. Mattingly thereafter filed his amended complaint naming the same defendants. The court's order granting the motion for judgment on the pleadings and order dismissing the complaint only named the College and Arthur Dorland.

Mattingly argues as his final point on appeal that because the superior court's order dismissing the complaint only named the College and Dorland, but not Gibb, for reasons of procedural due process, the order should be set aside. One of Mattingly's theories is that because Gibb had not moved for judgment on the pleadings, Mattingly was not accorded fair notice that the claims against Gibb were to be considered part of the motion practice.

This argument is without merit. Mattingly alleges no facts which would place Gibb in a position different from that of the College or Dorland. Thus, to the extent that the superior court's decision is correct as to the College and Dorland, it is correct as to Gibb. Mattingly had to know from Gibb's answer that Gibb was being defended by the College's counsel, and it is difficult to understand how Mattingly would not be on notice that any decision on the motion concerning the College and Dorland would not be applicable to Gibb. We hold that the superior court's error in failing to include Gibb's name on the judgment on the pleadings was harmless.

### III. CONCLUSION

Because Mattingly has set forth sufficient facts to allege a cause of action for negligently caused economic harm, the superior court's dismissal of Mattingly's complaint for failure to state a cause of action is reversed and remanded for further proceedings. The superior court's decision that Mattingly has not stated a cause of action for negligent and intentional interference with his contractual relations with his employees and with prospective economic advantage, for intentional and negligent infliction of emotional distress, and for punitive damages is affirmed.

AFFIRMED in part, REVERSED and REMANDED in part.

---

3. *See Croft v. Wicker,* 737 P.2d 789 (Alaska 1987) (action for negligently inflicted emotional distress stated where sexual assault of minor child occurred in "close proximity" to parents, who observed child's extreme distress "just after the alleged assault occurred").