**CHAMPION WELL SERVICE, INC.,**
**Appellant (Plaintiff),**

v.

**NL INDUSTRIES, a New Jersey corporation, NL McCullough, a subsidiary of NL Industries, Inc., Appellee (Defendant).**

No. 88–150.

Supreme Court of Wyoming.

Feb. 21, 1989.

Michael N. Patchen of Morgan, Price & Arp, Gillette, for appellant.

Michael K. Davis of Redle, Yonkee & Arney, Sheridan, for appellee.

Before CARDINE, C.J., and THOMAS, URBIGKIT, MACY and GOLDEN, JJ.

CARDINE, Chief Justice.

Appellant, Champion Well Service, Inc. (Champion), seeks review of an order of the district court which dismissed its complaint for failure to state a claim upon which relief can be granted. Champion claimed that appellee, NL Industries (NL), negligently injured one of Champion's key employees and, as a result, it suffered economic loss although it suffered no direct injury. In this appeal, Champion asserts its complaint contained averments which were sufficient to survive NL's motion to dismiss.

We affirm.

The facts relevant to the consideration of this appeal, and which were pled in Champion's complaint, are these. Champion hired Rod Lang as an employee in 1979. Lang had both a bachelor's and a master's degree and was highly intelligent and energetic. Champion spent a considerable sum of money training Lang. Eventually Lang became Champion's key employee. The following information, gleaned from the briefs, serves to flesh out the nature of Champion's claim. Both Champion and NL were hired by Prenalta Corporation to work over an oil rig. Champion's role was to complete the well and NL's was to perforate it. As a part of its job, NL would load or arm the perforating gun. Champion would put the gun in the well. NL would set off the charge after the gun was placed in the well by Champion. In 1985, while working on an oil rig alongside an NL employee, Lang was severely injured when the NL employee negligently discharged a casing gun. Champion asserts that NL was negligent in improperly training NL's employee; the perforating gun was not properly assembled; safety procedures were not properly followed in clearing the rig floor area of personnel such as Lang; and/or that the perforating gun was defective.

Champion asserts that it was unable to find an employee to replace Lang who could work up to Lang's standards. Some Champion clients complained that Champion's work was no longer as good as it was when Lang worked for it. As a result, Champion lost a number of jobs and expended significant monies trying to find and train employees who could capably handle the work Champion was doing when Lang was its employee. Lang's injuries

rendered him permanently physically incapable of performing his duties for Champion. Lang recovered a substantial award for his personal injuries. Champion lost the services of Lang as a direct and proximate result of NL's negligence and now seeks to recover damage because it lost Lang's services.

When considering a dismissal under Rule 12(b)(6), W.R.C.P., for failure to state a claim upon which relief can be granted, we accept the facts alleged in the complaint as true and view the allegations in the light most favorable to Champion. *Carbon County School Dist. No. 2 v. Wyoming State Hospital*, 680 P.2d 773, 773–774 (Wyo.1984); *McClellan v. Tottenhoff*, 666 P.2d 408, 414 (Wyo.1983). Such motions should be granted sparingly, and Champion is only required to plead the operative facts involved in the litigation so as to give fair notice of the claim to the defendant. *Johnson v. Aetna Cas. & Sur.*, 608 P.2d 1299, 1302 (Wyo.1980). As shall be borne out by the remainder of this opinion, Champion's failing was not one of failure to plead operative facts, but rather that the facts pled do not constitute a cause of action which is cognizable in this state.

Champion divided its complaint into two counts. In Count I, it relied upon the common law rule that a master may maintain an action for injuries to his servant resulting from negligent acts of third persons which damage the master through loss of the servant's services. 57 C.J.S. Master and Servant, § 622, p. 424 (1948). This common law rule has never been recognized in Wyoming and, although W.S. 8–1–101 adopts the common law as the law of this state, we have held that we will recognize the common law as modified by judicial decisions and will adopt that interpretation which seems best. *Krug v. Reissig*, 488 P.2d 150, 152 (Wyo.1971); *In re Smith's Estate*, 55 Wyo. 181, 97 P.2d 677, 681 (1940). Moreover, we have previously expressed a reluctance to recognize, or continue a recognition of, a common law rule that had its genesis in a social, economic and political climate entirely foreign to Wyoming in current times. *Weaver v. Mitchell*, 715 P.2d 1361, 1369 (Wyo.1986).

In reality, only a few rather dated cases support the rule espoused by Champion. See Annotation, Employer's Right of Action for Loss of Services or the Like Against Third Person Tortiously Killing or Injuring Employee, 4 A.L.R.4th 504 (1981). We agree with the Superior Court of Connecticut that the weight of authority and the better reasoned decisions deny the existence of such a cause of action even though a defendant is aware of the employee's relationship with a plaintiff. *Steele v. J and S Metals, Inc.*, 32 Conn.Sup. 17, 335 A.2d 629, 630 (1974); and see *Mattingly v. Sheldon Jackson College*, 743 P.2d 356, 361–63 (Alaska 1987). The suggested remedy is a reflection of an outdated social concept and is an anomaly in today's society in which employer/employee relationships are based on contract rather than ownership. *Hartridge v. State Farm Mutual Auto. Ins. Co.*, 86 Wis.2d 1, 271 N.W. 2d 598, 600, 4 A.L.R.4th 495 (1978). We conclude that, under present social circumstances, the rule which permitted recovery by an employer for the services of an employee is neither well suited to the times nor accepted in modern jurisprudence. The dismissal of Count I of the complaint is affirmed.

For Count II of its complaint, Champion relies on two modern cases which have adopted rules which Champion claims permit its cause of action. In *People Express Airlines, Inc. v. Consolidated Rail Corp.*, 100 N.J. 246, 495 A.2d 107, 65 A.L.R.4th 1105 (1985), the Supreme Court of New Jersey was asked to overturn a summary judgment in a case in which a fire began in the freight yard of Consolidated Rail (Conrail) when a tank car was punctured during a coupling operation. The fire had the potential to produce toxic fumes and necessitated evacuation of a one-mile radius from the fire. The evacuation area included an airline terminal building used by People Express Airlines (Airline). Airline contended it suffered business-interruption losses (e.g., employee time, cancelled flights, lost reservations) because of the evacuation, although there was no physical damage to Airline or its personnel. The

trial court granted summary judgment in favor of Conrail (and other associated defendants) on the ground that, absent property damage or personal injury, economic loss was not recoverable in tort. *Id.*, 495 A.2d at 108–109. In reversing the summary judgment, the court held:

> "[A] defendant owes a duty of care to take reasonable measures to avoid the risk of causing economic damages, aside from physical injury, to particular plaintiffs or plaintiffs comprising an identifiable class with respect to whom defendant knows or has reason to know are likely to suffer such damages from its conduct. A defendant failing to adhere to this duty of care may be found liable for such economic damages proximately caused by its breach of duty." *Id.*, 495 A.2d at 116.

Further, the court held:

> "[A] defendant who has breached his duty of care to avoid the risk of economic injury to particularly foreseeable plaintiffs may be held liable for actual economic losses that are proximately caused by its breach of duty. In this context, those economic losses are recoverable as damages when they are the natural and probable consequence of a defendant's negligence in the sense that they are reasonably to be anticipated in view of defendant's capacity to have foreseen that the particular plaintiff * * * is demonstrably within the risk created by defendant's negligence." *Id.*, 495 A.2d at 118.

The court concluded Airline had set forth a cause of action under these standards and was entitled to have the matter proceed to a plenary trial. The case is easily distinguished. Recovery is not for loss of employee services due to injury to the employees. Recovery permitted here is for loss of the injured party's property or loss of use of its property needed in the conduct of business. For this case to be authority supporting appellant's position, we would be required to recognize the injured employee as property of the employer. This we decline to do.

The People Express decision was relied upon, and in large part adopted by, the Alaska Supreme Court in its decision in *Mattingly v. Sheldon Jackson College,* 743 P.2d 356. In that case, three of Mattingly's employees were dispatched to Sheldon Jackson College (College) to clear a drain pipe on the college campus. College's employees had excavated and braced a trench to expose the drain pipe so Mattingly's employees could perform their work. The trench collapsed, and Mattingly's employees were seriously injured. One count of Mattingly's complaint asserted a cause of action for economic damages to his company despite a lack of physical harm or injury to the company. Under these circumstances the Alaska court held:

> "[W]e are satisfied that Mattingly has set forth a cause of action and is entitled to have the matter proceed on the issue of negligently caused economic losses, if any. * * * Mattingly maintained that the College had a duty to refrain from conduct which would foreseeably interfere with his ability to conduct his business. He is certainly a foreseeable and particularized plaintiff—the trench was dug so that his employees could work in it—who might predictably suffer economic losses if the College negligently caused harm to his business. Mattingly still faces a difficult task in proving his damages, particularly lost profits, to the degree of certainty required in negligence cases. He will also have to demonstrate that he could not have reasonably replaced his injured employees and thereby continued his business." *Id.*, 743 P.2d at 361.

The *Mattingly* case, presented by Champion in support of Count II of its complaint, is unsupported in law insofar as it allows an employer to recover damages for personal injury to its employees. The People Express case is not authority for, nor does it support, Mattingly.

We agree that NL owed a duty of care to Champion to avoid the risk of causing economic damages. But the economic damages recoverable in these circumstances are those that result from injury to, or loss of use of, property, not injury to third

persons. Thus, NL owed a duty of care to Lang to avoid negligently causing him injury. But to hold that NL owed a duty to diverse third persons, including Champion, to avoid injury to Lang would be to adopt a rule that is too broad, unwieldy, and impractical in present day society. Surely Lang's injury might impact his friends, his fishing buddies, his business partners, his employer, his grocery man, or his cleaning lady. They might have suffered damages, or they might not. None had any assurance that their relationship with Lang would continue for any particular period of time. Even personal service contracts are practically unenforceable insofar as they seek to force an employee to work. Claimed damages would be a product of total speculation and conjecture. If we adopted appellant's theory, every multi-national corporation whose employee was negligently injured by a third party in an auto accident, a ball game, at work, or at a party, would have a claim for damage. We decline appellant's invitation to adopt this theory for recovery.

In *Saffels v. Bennett,* 630 P.2d 505 (Wyo. 1981), we held that a decedent's former wife to whom decedent had an obligation to pay alimony was not a person who could maintain a wrongful death claim under W.S. 1–38–101 et seq. In holding that the former wife could not maintain her wrongful death action we stated:

> "If the words 'every person' were interpreted to include all who have suffered damage, the list would be endless. A person may have his professional or business life invested in a partner and suffer great damages if his partner is wrongfully killed. An employer may have a large investment in a key employee. A university may be damaged by the wrongful death of a professor. Even the milkman or newsboy conceivably suffer damage upon the death of a customer. All of us suffer damage, even financial loss, because of the death of a close friend."
> *Saffels,* 630 P.2d at 510.

We are convinced that the cause of action argued by Champion would erase the bright line which "has traditionally marked negligence claims for economic harm as off limits." Prosser & Keeton, Law of Torts, § 129, p. 1001 (5th Ed.1984). Therefore, we hold the district court properly dismissed Count II of Champion's complaint for failure to state a claim upon which relief can be granted.

AFFIRMED.