**EDWARD F. HEIMBROCK CO., INC., Appellant,**

v.

**MARINE SALES AND SERVICE, INC., Appellee.**

No. 88-CA-0350-MR.

Court of Appeals of Kentucky.

March 3, 1989.

Timothy J. Boone, Dennis J. Morrison, Sellman & Boone, Columbus, Ohio, Richard M. Breen, Hargadon, Lenihan, Harbolt & Breen, Louisville, for appellant.

Harry K. Herren, Christiana R.L. Norris, Grace M. Geisel, Woodward, Hobson & Fulton, Louisville, for appellee.

Before HOWARD, LESTER and MILLER, JJ.

MILLER, Judge.

This is an appeal from an Order of the Jefferson Circuit Court dismissing appellant's action for failure to state a claim. Kentucky Rules of Civil Procedure (CR) 12.02(f).

The facts are these: Gary T. Hubbuch was injured on the slopes of Paoli Peaks, Indiana, while snow-skiing February 3, 1985. Gary and his wife filed suit against the appellee, Marine Sales & Service, Inc. (Marine Sales), for injuries suffered, directly and derivatively. It was alleged that Marine Sales had negligently repaired or adjusted Gary's skis and bindings.

Gary's employer, appellant/Edward F. Heimbrock Co., Inc. (Heimbrock), also sued Marine Sales to recover lost earnings and future profits sustained as a result of Gary's injuries. Gary is the principal stockholder and president of Heimbrock which is engaged in the construction of brick furnaces. It is alleged that Gary is the company's chief salesman, traveling through Kentucky and the mid-east region of the United States to secure new customer accounts. Further, it is asserted that Gary was "the only person who had the technical knowledge to make competitive bids for jobs and who had sufficient skills to value the cost of labor and materials to complete a job properly."

Upon motion of Marine Sales, the trial court dismissed Heimbrock's claim under CR 12.02(f). It is from this order that Heimbrock appeals.

 The sole issue on appeal is whether Heimbrock has a cause of action against Marine Sales for economic loss (lost earnings and profits) allegedly sustained as a result of the latter negligently injuring Gary, Heimbrock's key owner/employee. In other words, may an employer maintain an action to recover damages from a tortfeasor who has negligently injured the employer's worker? Under an appropriate set of facts not here present, the answer may well be "yes." There appears to be no direct authority in this Commonwealth. It seems, however, the weight of modern decisions denies recovery. *See Rolling Fashion Mart v. Mainor*, 80 N.C.App. 213, 341 S.E.2d 61 (1986) (citing a host of authority). The denial is largely based upon recognition that the present-day employer/employee relationship is contractual in nature, varying from the common-law rule that a servant was a chattel, the loss of which effectively deprived a master of property.

The common-law rule permitting a master to recover for loss of services of his servant injured by the trespass of a third party has fallen into considerable disregard. *See Frank Horton & Co., Inc. v. Diggs*, 544 S.W.2d 313 (Mo.Ct.App.1976), and *I.J. Weinrot & Son, Inc. v. Jackson*, 40 Cal.3d 327, 708 P.2d 682, 220 Cal.Rptr. 103 (1985); Annot., 4 A.L.R.4th 504 (1981). In *Weinrot & Son*, it was observed that the common-law rule was never extended to business employees, but was limited to menial or domestic servants.

Appellant bases its argument upon two cases, to wit: *Mattingly v. Sheldon Jackson College*, 743 P.2d 356 (Alaska 1987); and *People Express Airlines, Inc. v. Consolidated Rail Corp.*, 100 N.J. 246, 495 A.2d 107 (1985).

In *Mattingly*, the employer (Mattingly) sought recovery for economic loss sustained as a result of tortious injuries to his employees. The employees were sent to the campus of the Sheldon Jackson College to clean a drainpipe. Employees of the college had dug and braced a trench in which Mattingly's employees were to perform the work. The trench collapsed, injuring Mattingly's employees. Mattingly's suit to recover economic damages as a result of the loss of services of his employees was dismissed by the trial court. On appeal, the Alaska Supreme Court reversed, holding that Mattingly, being a foreseeable and particularized plaintiff, was entitled to recover for economic loss sustained by his business.

In *People Express*, an airline brought suit against various defendants, including a railroad, for economic damages it suffered after a chemical tank-car accident at the nearby rail yard necessitated evacuation of the airline terminal where *People Express* conducted its operations. The New Jersey court set forth the following rules which were later adopted by the Alaska court in *Mattingly:*

> We hold therefore that a defendant owes a duty of care to take reasonable measures to avoid the risk of causing economic damages, aside from physical injury, to particular plaintiffs or plaintiffs comprising an identifiable class with respect to whom defendant knows or has reason to know are likely to suffer such damages from its conduct. A defendant failing to adhere to this duty of care may be found liable for such economic damages proximately caused by its breach of duty.

*People Express*, 495 A.2d at 116.

We are not persuaded of the efficacy of the two authorities cited by appellant as to the facts of the case at hand. In our view, neither *People Express* nor *Mattingly* extends as far as urged by appellant. *People Express* was a run-of-the-mill tort suit involving economic losses sustained by the plaintiff.[1] The issue presented was whether recovery would be permitted in the absence of physical damage to property or personal injury. The New Jersey court answered "yes," in accord with modern legal precepts. The court discussed a varie-

1. People Express Airlines, Inc., sought to recover expenses incurred for flight cancellations, lost bookings and revenue, and certain operating expenses.

ty of existing cases which permits recovery for purely economic damages—that is, cases where a special relationship exists between the parties, where the injury is particularly foreseeable, and cases allowing private actions for public nuisance. The court concluded that the existence of these cases eroded the *"per se"* rule (which apparently originated in *Robin's Dry Dock & Repair Co. v. Flint*, 275 U.S. 303, 48 S.Ct. 134, 72 L.Ed. 290 (1927)) that an injured party could not recover damages in the absence of physical injury. In reaching this conclusion, the court adopted the rule set forth above which is the traditional approach of foreseeability as it relates to duty and proximate cause. *See Palsgraf v. Long Island R.R.*, 248 N.Y. 339, 162 N.E. 99 (1928).

In *Mattingly*, the Alaska court merely held that the plaintiff (Mattingly) was a foreseeable and particularized plaintiff and could recover for business losses. Again, this is a garden-variety tort suit for negligent injury to a business, as in *People Express.* The Alaska court rejected Mattingly's claim for reparations due to the negligent injury to his employees, thereby adopting the modern rule enunciated in *Horton* and *Weinrot & Son, supra.* However, the court noted that a tort-feasor's "negligent injury to an employer's employee may be relevant to the employer's cause of action for negligently caused economic loss." *Mattingly*, 743 P.2d at 363.

This jurisdiction not infrequently looks to the Restatement of the Law of Torts in fixing tort liability. *Cf. Claycomb v. Howard*, Ky., 493 S.W.2d 714 (1973), and *Dealers Transp. Co. v. Battery Distrib. Co.*, Ky., 402 S.W.2d 441 (1965). Looking to the Restatement (Second) of Torts (1965), we find:

TOPIC 1. THE ELEMENTS OF A CAUSE OF ACTION FOR NEGLIGENCE

§ 281. Statement of the Elements of a Cause of Action for Negligence

The actor is liable for an invasion of an interest of another, if:

(a) the interest invaded is protected against unintentional invasion, and

(b) the conduct of the actor is negligent with respect to the other, or a class of persons within which he is included, ...

. . . . .

TOPIC 2. THE STANDARD BY WHICH NEGLIGENCE IS DETERMINED

§ 282. Negligence Defined

In the Restatement of this Subject, negligence is conduct which falls below the standard established by law for the protection of others against unreasonable risk of harm. It does not include conduct recklessly disregardful of an interest of others.

■ In view of the Restatement, together with an analysis of relevant cases, we are led to conclude that under ordinary circumstances employers are not within that particularized class of persons to whom a duty is owed and for which a breach of that duty exposes an actor to liability. Simply stated, a tort-feasor's conduct toward a business employee does not ordinarily expose the employer to "unreasonable risk of harm." Employers, therefore, have no action *per se* for injury or death of employees. We are, upon the facts of the case at hand, disinclined to believe Heimbrock has brought itself within a class protected from unintentional harm. To permit recovery in situations such as Heimbrock's would expand liability beyond reason and place a burden upon actors as opposed to employers who are in a better position to insure against loss. *See Weinrot & Son*, 708 P.2d at 690. Moreover, it would strongly mitigate the accustomed rule that the orbit of duty is the orbit of danger in the eye of prudent vigilance. *See Palsgraf*, 162 N.E. at 100. Simply put, under the facts at hand, Heimbrock is beyond the orbit of duty. The trial court was correct in dismissing the complaint under CR 12.02(f).

For the foregoing reasons, the judgment of the Jefferson Circuit Court is affirmed.

All concur.