## WOODWARD *vs.* WASHBURN.

The hiring of a person of full age, for wages, by the year, creates the relation of master and servant between the parties, and will enable the employer to maintain *case*, against one who imprisons the person employed, for the loss of his service.

The officers of a bank cannot justify the imprisonment of a person, on the ground that he remained in their office after the usual time for shutting the same, and was detained by their locking the outer door, though he knew the hour at which the bank was usually closed.

ERROR to the Onondaga C. P. Woodward sued Washburn before a justice of the peace and declared in case, " for the loss of service of one Welcome W. Smith, his hired man, occasioned by the said defendant detaining him in the Bank of Syracuse." The defendant pleaded the general issue, and gave notice of a special defence. On the trial before the justice it was shown that the plaintiff was a merchant at Syracuse, and that W. W. Smith was one of his clerks; he was of full age, and was hired

to the plaintiff at $300 a year.   On the 20th day of December, 1845, Smith went to the Bank of Syracuse a few minutes before 4 o'clock P. M. for the purpose of presenting some of the notes of the bank for redemption.   The defendant was in attendance as the teller, and on the notes being presented to him, he counted out the money and handed it to Smith.   While the latter was counting it, the clock struck four, upon which the defendant locked the street door on the inside and put the key in his pocket. When Smith had finished counting he requested to be let out, to which the defendant answered that the door would be unlocked when they went to tea, and that it might by chance be opened before, and requested him to sit down.   About half an hour afterwards, the door was opened to let in the notary, who came on business, and then Smith passed out.·  It was admitted that the bank was usually closed at four o'clock, and that the defendant was in the habit of coming to the bank with notes for redemption, and was acquainted with this custom.   The justice rendered judgment for the plaintiff for six cents damages and the costs, which judgment the common pleas reversed on *certiorari.*

*Forbes & Sheldon,* for the plaintiff in error, argued that the action was maintainable although the relation of master and *apprentice* did not exist between the plaintiff and Smith, and although the latter might himself maintain an action for the imprisonment.   A hired servant, they said, was within the rule equally with a child or an apprentice.   They referred to *Hart* v. *Aldridge, (Cowp.* 54 ;) 3 *Bl. Com.* 141 ; 2 *Kent's Com.* ed. 1844, *p.* 260.

*Sedgwick & Outwater,* for the defendant in error.   1. The principle allowing a recovery for the loss of service of a servant, occasioned by a battery or an imprisonment, has no application to a case like the present, where the servant was hired for wages and would himself lose the time during which he was kept from performing the service, and could himself recover for the injury.   The action is sustainable only where the plaintiff stands in *loco parentis* to the servant.   The action for enticing a ser-

vant from his master's service stands on different principles, for there the party enticed has no action for the wrong done. (*Reeve's Dom. Rel.* 376, 7; 1 *Cowen's Tr.* 361, 2d *ed.*) 2. The circumstances furnish a defence to the action, if otherwise sustainable.

*By the Court,* JEWETT, J. The evidence established a temporary loss of service of Smith by the plaintiff, in consequence of the act of the defendant. Assuming that the act was tortious, does the law afford the plaintiff a remedy against the wrongdoer? It is a principle of the common law, that where a person sustains a loss or damage, by the wrong of another, he may have an action upon the case to be remunerated in damages. (1 *Com. Dig.* 168, *tit. Action upon the Case, A.*) It is also a general principle that an action lies for an injury done to his slave, servant, apprentice or minor child, in favor of the party who stands in place of a parent, by reason of which he has sustained a loss of service or been put to expense in nursing or providing medical aid. But for the direct personal injury the party upon whom it is inflicted is alone entitled to the action, and to the damages when recovered. The master's or parent's right of recovery rests upon the ground that he has been deprived of some service to which he was entitled, or has been put to expense.

It is supposed, by the counsel for the defendant below, that the law affords no remedy to the master for loss of service of his servant, when the relation between them is such that the servant is answerable to the master for the time lost; as when a hired servant has been beaten and thereby disabled; as in such case the servant bears the loss and is not entitled to compensation during the time he was so disabled. This distinction is recognized by the late Judge Reeve. (*Treatise, p.* 376.) He says, "If a servant be beaten by a stranger, so that any loss of service is incurred by the master, the master is entitled to his action of trespass, and with a *per quod.* He is not to recover for the battery itself; the damages for this belong to the servant; but for the damages to nimself, occasioned by this battery, in the loss of service. This doctrine obtains only in those cases where the loss of service

must fall on him; as in the case of slaves, apprentices, and his children, and all others to whom he stands in *loco-parentis,* but not for a disappointment in his business, *as when his hired servant has been beaten;* for in this case the servant bears the loss, and is not entitled to wages during the time that he is disabled by a battery. Another ground of recovery in such case is the expense occasioned the master by the battery, *whenever this expense falls upon him;* as in the case of slaves, apprentices, children, &c. he is entitled to recover for it. But in the case of an hired servant, the servant must ultimately be at all the expense himself; and such expense will be a part of the damages which belong to him. If the beating be such as occasions no loss of service, the master is not entitled to recover any thing." I am not satisfied that this distinction is either sound in principle or sustained by authority. I do not find it stated by any other writer, or in any adjudged case. It is not and cannot be denied, that the relation of master and servant, for some purposes, exists between the person who hires another by the day, or month, and the one thus employed. There are two species of injuries incident to the rights arising from the relation between master and servant, as defined by Blackstone. (3 *Bl. Com.* 142.) " The one is, the retaining a man's hired servant before his time is expired; the other is beating or confining him in such a manner that he is not able to perform his work. As to the first, the retaining another person's servant during the time he has agreed to serve his present master; this, as it is an ungentlemanlike, so it is also an illegal act. For every master has, by his contract, purchased for a valuable consideration the services of his domestics for a limited time. The inveigling or hiring his servant, which induces a breach of this contract, is therefore an injury to the master; and for that injury the law has given him a remedy by special action on the case; and he may also have an action against the servant for the non-performance of his agreement. But if the new master was not apprised of the former contract, no action lies against him, unless he refuses to restore the servant upon demand. The other point of injury is that of beating, confining or disabling a man's servant, which depends upon the

same principle as the last, to wit, the property which the master has by his contract acquired in the labor of the servant. In this case, besides the remedy of an action of battery or imprisonment, which the servant himself as an individual may have against the aggressor, the master also, as a recompense for his immediate loss, may maintain an action of trespass *vi et armis ;* in which he must allege and prove the special damage he has sustained by the beating of his servant, *per quod servitum amisit."* *Hart* v. *Aldridge,* (*Cowp.* 54,) was an action of trespass on the case for enticing away several of the plaintiff's servants who used to work for him in the capacity of journeymen shoemakers. It was found by the jury, that two of the persons enticed were employed by the plaintiff as journeymen shoemakers, but for no determinate time, and only by the piece ; and that they had, at the time of the trespass laid, each of them a pair of shoes unfinished ; that the defendant persuaded them to enter into his service and to leave these shoes unfinished, which they accordingly did. The question came before the court on a case reserved. The counsel for the plaintiff stated that the only point for the opinion of the court was, " whether a *journeyman* was such a servant as the law takes notice of." On the other hand, counsel for the defendant insisted that the jury having found that there was no hiring for any determinate time, but only by the piece, they could not be the plaintiff's servants; for the term " journeyman" did not import that they belonged to any particular master. Lord Mansfield said, " The question is, whether saying that such a one is a man's journeyman, is as much as to say that he is such a man's servant ; that is, whether the jury by finding him to be the plaintiff's journeyman, do not *ex vi termini* find him to be his servant ? A journeyman is a servant by the day ; and it makes no difference whether the work is done by the day or by the piece." It was held by all the judges in that case, that the journeyman shoemaker employed by the plaintiff by the piece stood in the relation of servant to the plaintiff, by whom he was to be benefitted ; and that it was clear that the action would well lie. In *Hall* v. *Hollander,* (4 *Barn. & Cress.* 660,) Abbott, C. J. said, " It is a principle of the com-

mon law that a master may maintain an action for a loss of service, sustained by the tortious act of another, whether the servant be a child or not."

It is enough that the relation of master and servant exists between the plaintiff and the person who is disabled or prevented from performing the service he has contracted to perform, by the tortious act of the defendant. It is not necessary, to sustain such action, to show that the person whose service has been lost by the plaintiff was either his apprentice or child. The reason and foundation upon which this doctrine is built seem to be, the property that every man has in the service of those whom he has employed, acquired by the contract of hiring, and purchased by giving them wages.

The point of the argument of the counsel for the defendant on this part of the case is, that the relation of master and servant cannot exist, *quoad* this action, except between apprentice and master, parent and child, or unless the plaintiff stands in the place of a parent to the one from whom service is due. It seems to be conceded, when that relation exists, and the master has sustained loss of service by his servant being disabled by the tortious acts of the defendant, that the action lies. Chancellor Kent, in considering the relation of master and servant, subdivides the several kinds of persons who come within the description of servants, into—first, slaves; second, *hired servants ;* and third, apprentices. In regard to the second description, the learned commentator says, "The relation of master and servant rests altogether upon contract. The one is bound to render the service, and the other to pay the stipulated consideration.". And again ; " In England, there seems to be a distinction between menial and some other servants, but I know of no legal distinction between menial or domestic and other hired servants." (2 *Kent's Comm. 4th ed. p.* 258 *et seq.*)

But it is argued, secondly, that this action cannot be supported because the defendant shut the door of the bank at the usual time and in the usual manner, and that if Smith was detained it was his own fault. The facts do not make such impression upon my mind. In a moral point of view, the facts plainly

show that the conduct of the defendant on this occasion was highly reprehensible, admitting of no just ground of palliation; clearly indicating, that although the defendant may be generally courteous and correct in his intercourse with those with whom he is brought in contact in his employment, there must have existed other matters between the parties, not disclosed by the case, which prompted him to inflict such vexation and insult as it appears by the evidence he did.   Smith was sent there by the plaintiff on a legitimate errand, at a proper time, and had a legal right to remain a reasonable time to transact the business, and was entitled to depart unmolested so soon as it was completed. Although the usual hour for closing the bank intervened, the means taken to detain him longer were unjustifiable.   The judgment of the justice is sustained by sound principles of law; and consequently the judgment of the common pleas should be reversed, and that of the justice affirmed.

Judgment reversed.