HUGO S. FERGUSON, Plaintiff, and AIR CUSHION VEHICLES, INC., Appellant, v. GREEN ISLAND CONTRACTING CORPORATION, Respondent, and RENSSELAER COUNTY AIR PARK, INC., Defendant.

Third Department, May 9, 1974.

*Nolan & Heller, P. C.* and *Healey & Donnelly, P. C.* (*Daniel Donnelly* and *Arthur V. Hart* of counsel), for appellant.

*DeGraff, Foy, Conway & Holt-Harris* (*Michael G. Breslin* of counsel), for respondent.

KANE, J. This is an appeal from an order of the Supreme Court at Special Term, entered November 20, 1973 in Rensselaer County, which dismissed the second cause of action of plaintiff Air Cushion Vehicles, Inc. against the defendant Green Island Contracting Corporation.

While riding as a passenger in an airplane allegedly owned and operated by defendant Green Island Contracting Corpora-

tion (hereinafter referred to as Green Island) and Rensselaer County Air Park, Inc., plaintiff, Hugo S. Ferguson, a key employee of plaintiff Air Cushion Vehicles, Inc. (hereinafter referred to as Air Cushion), sustained severe and disabling personal injuries when the plane crashed.

In the second cause of action in the complaint, plaintiff Air Cushion seeks damages from defendant Green Island for disabling its employee thereby causing it to sustain severe economic loss. Plaintiff Air Cushion also contends that the pilot of the plane was aware of the importance of Dr. Ferguson to the successful operation of its business.

The sole issue on this appeal is whether or not an employer who is deprived of the services of a key employee as a result of the negligence of some third party has a cause of action against that third party for the loss of such services.

Plaintiff Air Cushion relies on the rule enunciated in *Woodward* v. *Washburn* (3 Denio 369 [decided in 1846]). In sustaining a judgment in favor of an employer, wherein a clerk in plaintiff's store was, during store hours, tortiously locked in a bank by the defendant, a teller in the bank, the then highest court of this State said (p. 374): "It is enough that the relation of master and servant exists between the plaintiff and the person who is disabled or prevented from performing the service he has contracted to perform, by the tortious act of the defendant. It is not necessary, to sustain such action, to show that the person whose service has been lost by the plaintiff was either his apprentice or child. The reason and foundation upon which this doctrine is built seems to be, the property that every man has in the service of those whom he has employed, acquired by the contract of hiring, and purchased by giving them wages."

This rule was followed thereafter, but only in cases involving intentional torts (*Tidd* v. *Skinner*, 225 N. Y. 422; *Lawyer* v. *Fritcher*, 130 N. Y. 239; *Bartley* v. *Richtmyer*, 4 N. Y. 38). Although there have been some cases indicating an expansion of this rule to include recovery for mere negligence on the part of a third party (*Employers' Liab. Assur. Corp.* v. *Daley*, 271 App. Div. 662, affd. 297 N. Y. 745; *Mineral Inds.* v. *George*, 44 Misc 2d 764), recent lower court determinations have concluded that the legal relationship contemplated in the *Woodward* case was based upon a relationship entirely different from that presently existing between an employer and his employee, and, thus, under more modern concepts, the third party owed no legal duty to the employer of the injured party

(*Myrurgia Perfumes* v. *American Airlines*, 68 Misc 2d 712; *Dotoratos* v. *Greenidge*, 54 Misc 2d 85).

Therefore, as a question of first impression, we are called upon to decide whether a new cause of action should be recognized to protect the contractual interest of an employer in the continuation of an employee's unimpaired services when the latter is negligently injured by expanding the scope of duty owed by a third-party tort-feasor to encompass his victim's employer. Such a theory has been rejected in a number of other jurisdictions (cf. 53 Am. Jur. 2d, Master and Servant, §§ 402, 403; 57 C. J. S., Master and Servant, § 622; Ann. 57 ALR 2d 802; *Preiser Scientific* v. *Piedmont Aviation,* 432 F. 2d 1002, cert. den. 401 U. S. 1009). In our State the factors to be considered when a new cause of action is proposed were specifically faced in *Tobin* v. *Grossman* (24 N Y 2d 609) where the duty of a negligent party was not extended to protect the psychic well-being of parents upon physical injury to their children. The reasoning adopted by the *Tobin* court compels its application to this case. A reading of that decision makes it abundantly clear that, should the cause of action pleaded in this case become judicially sanctioned, it would be nearly impossible to protect against a proliferation of claims both real and fraudulent; preclude unlimited liability; avoid arbitrary distinctions in defining the areas of liability; weigh the forseeability of particular injuries; guard against unlimited or unduly burdensome liability; and cope with other related problems. The potential loss of an employee's services is not a novel risk of harm to business. Indeed, so-called "key man" insurance has long existed to afford the employer some relief from that very type of risk. If that protection is inadequate or if the policies behind the weight of authority denying recovery for such negligently inflicted injuries are too narrowly based, then, in our view, a reversal of that condition should be accomplished by legislative means. "While it may seem that there should be a remedy for every wrong, this is an ideal limited perforce by the realities of this world * * *. The problem for the law is to limit the legal consequences of wrongs to a controllable degree " (*Tobin* v. *Grossman, supra,* p. 619). It is enough that the judiciary promotes essential justice in this area by protecting intentionally disturbed employment relationships. The order should be affirmed, without costs.

HERLIHY, P. J. (dissenting). For the purposes of this appeal from the order which dismissed Air Cushion's cause of action solely upon the ground that the facts alleged in the complaint

did not constitute a legally cognizable cause of action, the facts in the second cause of action of the complaint are undisputed and are partially as follows:

THIRTEENTH: Plaintiff Air Cushion Vehicles, Inc. repeats and realleges each and every allegation contained in paragraphs "First" through "Eighth" and "Tenth" of this complaint.

FIRST: * * *

SECOND: * * *

THIRD: At all times mentioned, defendant Rensselaer was a common carrier engaged in the business of providing transportation of passengers by aircraft for hire.

FOURTH: At all times mentioned, in connection with its business defendant Rensselaer owned and, through its officers, agents and employees, operated and controlled a certain Piper Aztec aircraft bearing registration N6879Y.

FIFTH: At all times mentioned, defendant Green Island owned, operated and controlled a certain Piper Aztec aircraft bearing registration N6879Y.

SIXTH: On or about the 19th day of November 1970 plaintiff Hugo S. Ferguson was a passenger for hire on said aircraft on a flight from Bradley Airport, Windsor Locks, Connecticut to Albany County Airport.

SEVENTH: During said flight on or about the 19th day of November 1970, said aircraft crashed in the vicinity of Poestenkill, New York.

EIGHTH: Said crash caused plaintiff Hugo S. Ferguson to suffer disabling and permanent personal injuries.

NINTH: * * *

TENTH: Said crash, injuries and other damages were caused by the negligence of defendants Rensselaer and Green Island in carelessly operating and controlling said aircraft.

FOURTEENTH: * * *

FIFTEENTH: * * *

SIXTEENTH: At all times mentioned plaintiff Hugo S. Ferguson was an employee of plaintiff Air Cushion Vehicles and was the person on whom plaintiff Air Cushion Vehicles relied for its product design and development and to establish its fabrication processes for said products.

SEVENTEENTH: * * *

EIGHTEENTH: As a result of said crash and personal injuries sustained by Hugo S. Ferguson, plaintiff Air Cushion Vehicles, Inc. was deprived of the services of said Hugo S. Ferguson which resulted in loss of profits to plaintiff Air Cushion Vehicles, Inc.

It is also not disputed by Green Island and for purposes of the motion to dismiss is admitted in its brief that the subject aircraft was owned by it at the time of the accident and " On several occasions prior to the flight on November 19, 1970, Air Cushion Vehicles had rented the services of a pilot and N6879Y. The pilot of the aircraft at the time it crashed was aware of the vital role played by Dr. Ferguson for Air Cushion Vehicles, Inc."

The legal issue presented by Green Island upon the motion at Special Term and again presented in this court as the pivotal issue was: " Does an employer, whose employee has been

injured through the negligence of a third party, have a cause of action against such third party for the loss of services of its employee? "

Green Island and the majority herein recognize that in 1846 the highest court of this State in the case of *Woodward* v. *Washburn* (3 Denio 369) specifically held that a cause of action would exist on the part of an employer where the tortious conduct of a third person directed solely at the employee did interfere in the carrying out of the employment. Nevertheless, it is asserted that because the *Woodward* case arose during a period of time where the master-servant relationship was more in the nature of a parent-child situation (slavery) the decision therein should not be followed as we have now a much different public concept of employment. In this case, Special Term found that the court in *Woodward* had only permitted actions for loss of services which would relate to servants and apprentices and not to a simple employer-employee relationship and, accordingly, found that such a cause of action as alleged herein would be an extension of the *Woodward* case and is not a recognized common-law cause of action.

Assuming that in the present case the precise tort to the person of the employee is not identical with that presented in *Woodward* v. *Washburn* (*supra*), it nevertheless does not appear that the matter is one of first impression as the fundamental facts in this particular case are comparable to those in *Woodward*.

While the court can accept judicial knowledge of the facts that social and economic relationships cannot be considered identical between today and a time some 126 years in the past history of this Nation, the concept of the employment involved in the *Woodward* case is clearly set forth by that court. It seems apparent from the decision in the *Woodward* case that the court did not then consider the master-servant relationship to be solely one of servitude where the employer could be equated to a parent of the employee. The court in *Woodward* clearly held that, to sustain an action on behalf of the employer, it was not necessary to establish that the employee was an apprentice. There is no room to doubt that the pivotal point of the court's determination was the finding that an employer had a property right growing out of the contract of hiring to the services of his employees. The court stated (p. 374): " It is enough that the relation of master and servant exists between the plaintiff and the person who is disabled or prevented from performing the service he has contracted to perform, by the

tortious act of the defendant. It is not necessary, to sustain such action, to show that the person whose service had been lost by the plaintiff was either his apprentice or child. The reason and foundation upon which this doctrine is built seems to be, the property that every man has in the service of those whom he has employed, acquired by the contract of hiring, and purchased by giving them wages.''

Quite clearly by the time of the *Woodward* case the practice of free employment conditioned upon the express or implied contract by one person to perform work, labor and services for another was established and was firmly the posture of the case before that court. In today's society the concept of employment is no different than that premised in the *Woodward* case, to wit: In a contract between the employee and the employer, certainly it cannot be disputed that the contract confers important rights and benefits upon both parties thereto and is as much an incident of property as any other contractual relationship — i.e., services acquired by the contract of hiring in return for the payment of wages. It does not appear that in *Woodward* the court was in any fashion assuming that the contract conveyed a property interest in the employee but the property right being the right to the fruits of the labor of the employee and so long as the contract may endure.

In considering the facts of *Woodward* v. *Washburn* (*supra*), it should be noted that the employee had been hired at an annual salary of $300; that the defendant therein was aware of a contractual relationship between the employee and the plaintiff at the time the defendant committed tortious conduct interfering with the employment; and that the record would support the inference that the tort-feasor was aware at the time of the tort that the employee was about the employer's business.

In this State, there were no other reported cases directly or indirectly dealing with a cause of action asserted by an employer against a third person for damages based upon torts inflicted by that person to an employee on common-law principles until 1965 in the case of *Mineral Inds.* v. *George* (44 Misc 2d 764). In the *Mineral Inds.* (*supra*) case the court determined that the holding of *Woodward* v. *Washburn* (*supra*) remained the law of the State and that an employer does have a cause of action based upon the negligent injury of his employee insofar as the employer suffers damages relating to lost services. In 1967, in the case of *Dotoratos* v. *Greenidge* (54 Misc 2d 85) it was determined that an employer did not have a cause of action based upon injuries to his employee by a third per-

son. In 1971 in the case of *Myrurgia Perfumes* v. *American Airlines* (68 Misc 2d 712) the court denied any cause of action on behalf of an employer based upon *Woodward* v. *Washburn* (*supra*) and asserted that such a rule was in the nature of recognizing slavery.

In 1920 in the case of *Lamb* v. *Cheney & Son* (227 N. Y. 418) the Court of Appeals, in considering whether or not the employer could sue a third person upon the ground that such person had induced an employee to breach his contract of employment and leave such employment, held that such a cause of action existed and referred to the case of *Woodward* v. *Washburn* (*supra*) without specifying the application of *Woodward* to the case. In the *Lamb* case the court held that where a third person is aware of an ongoing contract of employment but nevertheless induces an employee to breach the contract and leave the employment, the employer has a cause of action against such third person for damages resulting from loss of services. While obviously the cause of action in *Lamb* did not relate to any injury to the employee, it must be concluded that the case was a recognition of the fact that the employer does have a property interest and rights in regard to the contractual services of an employee. As noted above, it was the finding in the *Woodward* case of such a property interest in the contract of employment that supported the cause of action therein.

Upon this appeal, it is urged that *Woodward* v. *Washburn* (*supra*) was criticized by the highest court in Massachusetts in the case of *Chelsea Moving & Trucking Co.* v. *Ross Towboat Co.* (280 Mass. 282 [1932]). While in *Chelsea* the court did refer to the *Woodward* case as being " old ", it did not, upon its facts, hold contrary to the *Woodward* case. Indeed, the court therein only noted that *Woodward* had " a contrary tendency " to the decision of the court in *Chelsea*. In the *Chelsea* case the court held only that, where the contractual relationship of employer-employee is unknown to the defendant, then negligent injury to the employee was too indirect and remote to support liability by the third person to the employer. It seems apparent that the *Chelsea* case did not directly hold that an employer could not recover from a third person for negligent injuries to an employee which resulted in loss of services, in all instances. However, it is recognized that, in the absence of facts to establish a foreseeability on the part of a tortfeasor that injury to a person would result in a loss of that person's services to another, damages would be remote and indirect and the *Chelsea* rule is reasonable.

In the present case, the facts outlined above reasonably establish a direct relationship between Green Island and Air Cushion which would infer knowledge on the part of Green Island of the contractual relationship between Air Cushion and its employee. Accordingly, the *Chelsea* case would not upon its face preclude liability herein.

In his treatise on torts, Professor Prosser, after stating that it is the general rule that contract interests are not protected against negligent interference, makes the following statement (Prosser, Law of Torts [4th ed.], § 129, pp. 940–941): "No very satisfactory reason has been given for this refusal of a remedy [in cases involving the negligent interference with contract]. For the most part the courts have talked of 'proximate cause', and have said that the consequences were too 'remote'. *In all of the cases denying recovery the defendant had no knowledge of the contractual relation and no reason to foresee any harm to the plaintiff's interests*; and this has led some writers to conclude that they do not mean that no negligence action could ever be maintained, but merely that there was no duty to the plaintiff in the particular instance. While this is very persuasive, it seems more likely that the courts are deliberately refusing to protect any contract against negligence, influenced by fear of an undue burden upon freedom of action, the relative severity of the penalty which may be imposed upon mere negligence, the possibility of collusive claims and increased litigation, and the difficulty of apportioning damages. If this is true, the question may at least be raised whether such a policy is not too narrow, and whether, as in the somewhat analogous case of the liability of the contractor himself to third parties, the law may not be expected to move in the future in the direction of recovery by those whose damages are forseeable by the actor." (Emphasis supplied.)

In this particular case it is undisputed that Air Cushion contracted with Green Island for the hiring of the airplane and for it to carry an employee of Air Cushion to particular destinations. While obviously Green Island had an obligation not to be negligent insofar as the employee himself was concerned as a passenger, Green Island certainly incurred an obligation to Air Cushion to safely carry out the purposes of the contract relating to the airplane. The facts are such as to infer knowledge on the part of Green Island that Air Cushion had contractual rights in regard to the services of the employee and in undertaking to transport, Green Island could be found by a jury to have undertaken a direct obligation and duty to the

appellant with foreseeability that negligent performance and/or negligence in regard to the employee would cause injury to it.

The problems perceived in the case of *Tobin* v. *Grossman* (24 N Y 2d 609) in regard to what clearly was a new cause of action do not appear to apply in this case which is fundamentally founded upon a direct contractual relationship between Air Cushion and Green Island. Foreseeability in this case is established for purposes of the motion and the cause of action allowed does not relate to situations which might permit unlimited liability or " a proliferation of claims both real and fraudulent ".

Upon a motion to dismiss for failure to state a cause of action, the allegations of the complaint are to be construed most favorably to the plaintiff. Upon the foregoing facts, Air Cushion has established the existence of a cause of action based upon contract rights and duties and based upon a property right in regard to the services of an employee, the nature and extent of such right and services being subject to further proceedings.

The order should be reversed, and the motion denied.

Staley, Jr., Cooke and Sweeney, JJ., concur with Kane, J.; Herlihy, P. J., dissents and votes to reverse in an opinion.

Order affirmed, without costs.