**Charles E. MORTON and Steel & Machinery Transport, Inc., Appellants (Defendants Below),**

v.

**MERRILLVILLE TOYOTA, INC.,**
**Appellee (Plaintiff Below).**

**No. 56A03–8912–CV–556.**

Court of Appeals of Indiana,
Third District.

Nov. 21, 1990.

Frank J. Galvin, Jr., Daniel A. Sawochka, Galvin Stalmack & Kirschner, Hammond, for appellants.

Frederick J. Ball, Kingsley G. Regnier, Goodman Ball & Van Bokkelen, Highland, for appellee.

STATON, Judge.

Charles E. Morton and Steel & Machinery Transport, Inc. bring this interlocutory appeal in response to the trial court's denial of their motion to dismiss Merrillville Toyota, Inc.'s claim for loss of services of its employee. Their appeal presents us with two issues:

I. Whether the trial court erred in denying Morton's motion to dismiss Merrillville Toyota's claim for the loss of its employee's services and the resulting loss of profits.

II. Whether the damages sought by Merrillville Toyota are based upon mere conjecture, speculation and guesswork and therefore not properly the subject of a damage award.

Since our treatment of Issue I mandates reversal, we decline to address Issue II.

The facts alleged in the complaint indicate that Michael S. Marino was operating an automobile owned by his employer, Merrillville Toyota, when he collided with a semi-tractor trailer operated by Charles E. Morton in the course of Morton's employment with Steel & Machinery, Inc. As a result of the collision, Marino was injured and was unable to resume his normal duties with Merrillville Toyota.

Merrillville Toyota brought this lawsuit against Morton and Steel & Machinery, Inc., (collectively, "Morton") seeking compensation for loss of Marino's services and damage to its automobile. The defendants filed a motion to dismiss pursuant to Indiana Rules of Procedure, Trial Rule 12(B)(6), alleging that Merrillville Toyota's claim for loss of Marino's services failed to state a claim under Indiana law. They appeal the denial of that motion.

Upon review of the denial of a motion to dismiss pursuant to Trial Rule 12(B)(6), we must determine whether the complaint is sufficient to state any valid claim. *Lincoln Nat. Bank v. Mundinger* (1988), Ind. App., 528 N.E.2d 829, 832. In so doing, we view the complaint in the light most favorable to the plaintiff and with every inference drawn in his favor. *Id.*

Our review of the legal sufficiency of Merrillville Toyota's complaint takes us back to the genesis of our American legal system. Although the United States became politically emancipated from Great Britain in the late eighteenth century, it did not divorce itself culturally from the mother country. Among the cultural baggage retained by our infant nation was the English common law system. The basis of our present system of jurisprudence, the Anglo–Saxon common law consisted of principles and rules of law which arose and were perpetuated in the judgments and decrees of the English courts, and which were founded upon usages and customs of antiquity. One such rule of law gave rise to an action *per quod servitium amisit.* Literally, "whereby he lost the service," [1] Blackstone described the cause of action as follows:

> A master also may bring an action against any man for beating or maiming his servant: but in such a case he must assign, as a special reason for so doing, his own damage by the loss of his service; and the loss must be proved upon the trial.

1 W. Blackstone, *Commentaries on the Laws of England* 429 (9th ed. 1783).

The action *per quod servitium amisit* was borrowed by the English from the early Roman law. The Roman *actio iniuriarum* seeking recovery for injury to members of a household could only be brought by the head of the household—the *paterfamilias.* The Roman view of the household was broad, and included relatives, dependents, and slaves, all of which were closely identified with the *paterfamilias.* In incorporating this notion into the common law, the English allowed both a direct action for injury to a servant or another under the master's power, as well as an indirect action for the consequential loss of his services. Sayre, *Inducing Breach of Contract,* 36 Harvard L.Rev. 663 (1923). Thus, the action gained acceptance in the time when the master had a proprietary interest in the servant, acquired through the hiring of the servant

and purchased through the payment of his wages. *Id.; Inland Revenue Comm'rs v. Hambrook* (1956) 2 Q.B. 641; 57 A.L.R.2d 790, 795.

Consistent with its rationale, the action was limited to injury to domestic servants. *Inland, supra,* 57 A.L.R.2d at 795; *Taylor v. Neri* (1795) 1 Esp. 386, 170 Eng.Reprint 393. *Cf. Martinez v. Gerber* (1841) 3 Man. & G. 88, 133 Eng.Reprint 1069. Such servants were a part of the master's household, and thus enjoyed a quasi-familial relationship with the master. *Inland, supra,* 57 A.L.R.2d at 797. While the domestic servant had an expectation that he would be cared for by the master, the master had a corresponding property interest in the servant, and if the servant was injured, the master could reasonably expect compensation for his trouble. *Id.* at 795.

Over time, the makeup of society changed, and the English courts found that the rationale underlying the action *per quod servitium amisit* was no longer viable. The modern employment relation in England, as in the United States, does not depend upon status but arises out of a contract between the "master" and the "servant". In 1956 the English Court of Appeal in *Inland Revenue Comm'rs v. Hambrook, supra,* stated:

> Now, having traced the history of this action, I think it should be confined today (as it was in the eighteenth century) to the realm of domestic relations where a member of the master's household is injured: for that is the only realm to which it can in reason be applied. It does not lie, therefore, at the instance of governments, limited companies, or other employers who keep no household.

57 A.L.R.2d at 796. Thus, if the action *per quod servitium amisit* ever allowed recovery by an employer for an injury to non-domestic employees, such an action has now been expressly repudiated in the English common law by the *Inland* decision.

On the other side of the Atlantic, the courts in the United States had adopted the action in whole cloth from the Anglo–Saxon

---

1. Black's Law Dictionary (4th Ed.1968).

common law. *See e.g. Woodward v. Washburn* (1846), N.Y., 3 Denio 369; *Coal Land Development Co. v. Chidester* (1920), 86 W.Va. 561, 103 S.E. 923, *overruled on other grounds Nemo Foundations, Inc. v. New River Co.* (1971), 155 W.Va. 149, 181 S.E.2d 687; *The Federal No. 2* (2nd Cir. 1927), 21 F.2d 313, *overruled, Black v. Red Star Towing & Transp. Co., Inc.* (2nd Cir. 1988), 860 F.2d 30; *Earley v. Pacific E.R. Co.* (1917), 176 Cal. 79, 167 P. 513; *Clark v. Gay* (1901), 112 Ga. 777, 38 S.E. 81; *Dennis v. Clark* (1848), 56 Mass. 347; *St. Paul v. Sorenson* (1969), 283 Minn. 158, 167 N.W.2d 17; *Campbell v. Cooper* (1856), 34 N.H. 49; *Wolff v. DuPuis* (1963), 233 Or. 317, 378 P.2d 707, *overruled on other grounds Bahler v. Fletcher* 257 Or. 1, 474 P.2d 329; *Fairmount & A.S.P.R. Co. v. Stutler* (1867), 54 Pa. 375; *Trow v. Thomas* (1898), 70 Vt. 580, 41 A. 652. Some early American courts extended the action to allow recovery for negligent injury even to non-household employees. *See e.g. Woodward, supra.* However, like their English counterparts, courts in this country began to note that the rationale for the action for negligent injury to a servant or employee no longer rang true in today's society. The number of states which recognize the action has been gradually decreasing, with many courts noting the trend toward non-recognition of the action and the repudiation of the action in the country of its origin. *See Heimbrock Co. v. Marine Sales & Service* (1989), Ky.App., 766 S.W.2d 70; *Cravens/Pocock Ins. v. Beasley Const.* (1989), Tex.App., 766 S.W.2d 309; *Champion Well Service, Inc. v. NL Industries* (1989), Wyo., 769 P.2d 382; *Mattingly v. Sheldon Jackson College* (1987), Alaska, 743 P.2d 356; *Rolling Fashion Mart, Inc. v. Mainor* (1986), 80 N.C. App. 213, 341 S.E.2d 61; *Ireland Electric Corp. v. Georgia Highway Express, Inc.* (1983), 166 Ga.App. 150, 303 S.E.2d 497; *Zawadzki v. Checker Taxi Co.* (N.D.Ill. 1982), 539 F.Supp. 207; *B.V. Merrow Co. v. Stephenson* (1980), 102 Mich.App. 63, 300 N.W.2d 734; *Frank Horton & Co., Inc. v. Diggs* (1976), Mo.App., 544 S.W.2d 313; *Steele v. J. and S. Metals, Inc.* (1974), 32 Conn.Sup. 17, 335 A.2d 629; *Myrurgia Perfumes, Inc. v. American Airlines, Inc.* (1971), 68 Misc.2d 712, 327 N.Y.S.2d 861; *Chelsea Moving & Trucking Co. v. Ross Towboat Co.* (1932), 280 Mass. 282, 182 N.E. 477.

■ Turning to the law in our own state, we find no definitive Indiana precedent on the issue of whether an employer may recover damages for loss of an employee's services due to negligent injury to the employee by a third party. Notwithstanding the absence of caselaw on the issue, Merrillville Toyota argues that Indiana has adopted the English common law as part of the hierarchy of laws in the State of Indiana, which we must follow. IND. CODE 1–1–2–1 (Supp.1990). We agree that decisions should be governed by precedent, but when the reasons for a rule of law cease to exist, the rule should be discontinued. *McLochlin v. Miller* (1966), 139 Ind. App. 443, 217 N.E.2d 50, 52. When the question is properly raised, it is the duty of the court to investigate the wisdom of precedents established many years ago. *Id.*

■ Merrillville Toyota cites the following language from the Indiana case of *Jackson v. Pittsburgh, C.C. & St.L. Ry. Co.* (1895), 140 Ind. 241, 39 N.E. 663 in support of its position that we must apply the common law rule:

> The rule at common law is that a parent may recover from a wrongdoer damages for depriving him of the services of his child *upon the same principle that the master recovers for the loss of services of his servant.*

(Emphasis added).

Merrillville Toyota's reliance on this language is misplaced. Our Supreme Court in *Jackson* was determining Ohio law pursuant to conflict of laws rules. It did not purport to state Indiana law. Although the case might indicate the Indiana Supreme Court's interpretation of the common law in that area of master/servant relations, it is not binding on this court as to questions of Indiana law. In addition, the statement is *obiter dictum. Koske v. Townsend Engineering* (1990), Ind., 551 N.E.2d 437. No

later Indiana case cites *Jackson* for the principle that an employer may recover damages for loss of services for negligent injury to his employee. *Accord B.V. Merrow Co. v. Stephenson* (1980), 102 Mich. App. 63, 300 N.W.2d 734, 736.[2] Finally, even if the statement were binding, it does not purport to extend the common law further than the court in *Inland, supra,* indicates the law was extended. Under the common law, the employer could only recover for injury to domestic servants, not to non-household employees like Marino in the present case. Thus, Merrillville Toyota can find little solace in Indiana law.

Even if the cause of action is not recognized under Indiana law, Merrillville Toyota argues that we should adopt it in order to prevent defendants from escaping liability for economic injuries which proximately result from their tortious conduct. In support of this argument, Merrillville Toyota argues vigorously that its claim is analogous to rights conferred in other areas of Indiana law, including the right of recovery for loss of consortium, the right of subrogation, the doctrine that a defendant must take his plaintiff as he finds him, the right of subsequent purchasers to recover under an implied warranty of habitability, the right of bystanders to recover under the Products Liability Act, and rights of recovery under the Wrongful Death Act.

■ Addressing each of these areas of law in turn, we note that the right to recover for loss of consortium is dependent upon a familial relationship, which is not present here. In addition, the Indiana Supreme Court has recently expressed an unwillingness to extend this action even to other members of the immediate family of the injured individual, limiting the right to recover strictly to spouses. *Dearborn Fabricating & Engineering v. Wickham* (1990), Ind., 551 N.E.2d 1135.

■ The right of subrogation is clearly distinguishable from an action for negligently injured employees. Subrogation allows a substitution of plaintiffs. It does not create additional plaintiffs with a new right of recovery.

■ Merrillville Toyota argues that the doctrine that a defendant takes his plaintiff as he finds him allows recovery for unforeseeable injury to the plaintiff. This rule, however, only allows recovery for an injury whose extent was unforeseeable. Some injury must have been foreseeable, and the defendant's negligence must have been the proximate cause of the aggravated injury. *Dunn v. Cadiente* (1987), Ind., 516 N.E.2d 52, 56. This rule does not create a new class of plaintiffs, but merely prevents a defendant from escaping liability because his plaintiff had a preexisting injury which was aggravated, rather than a new injury caused by the negligence of the defendant.

■ Merrillville Toyota also argues that the extension of liability for breach of implied warranty of habitability to subsequent purchasers of real estate is analogous to extension of liability for injury to employees of the plaintiff, because both allow recovery for economic loss. We need only note that the action for breach of implied warranty of habitability lies in contract, not in tort, and we do not find it persuasive in determining whether to create a new action in tort law.

---

**2.** In *Stephenson,* the Court of Appeals of Michigan was faced with an identical fact situation and identical legal arguments to those in the case at bar. There, the plaintiff relied on the following language in *Hyatt v. Adams* (1867), 16 Mich. 180, at 189:

This is the common law maxim: '*actio personalis moritur cum persona.*' * * *

This would furnish an adequate reason why no action could be brought by personal representatives, or others, for such damages as the deceased might have recovered for the injury, if death had not ensued, as the action for such damages would not survive. But this reason could have no application whatever to *an action brought by a master for loss of services of his apprentice,* or by a husband for those of his wife; since in these cases the cause of action could never have been vested in the servant or the wife, and could not be lost by the death. (Emphasis added.)

The court noted that the emphasized language was *obiter dictum,* and therefore not binding, and held that it was "not inclined to extend a rule which is recognized by the majority of jurisdictions as being a reflection of outdated social concepts." *Stephenson, supra* 300 N.W.2d at 736.

We also do not find it persuasive that the Products Liability Act and the Wrongful Death Act may have created new classes of plaintiffs not able to recover under common law. These statutes are expressions of legislative judgment, not judicial extensions of the law.

Merrillville Toyota finally contends that employers may suffer a cognizable loss of profits when their employee is injured by a negligent third party, and rather than place the cost upon the shoulders of the employer, it should be borne by the tortfeasor whose negligence caused the loss. It argues that placing the burden of the loss upon the employers who exist in a competitive environment will result in the costs being passed on to the consumer through higher prices.

Merrillville Toyota fails to recognize the probable countervailing effect upon society. Permitting employers to recover for loss of profits for negligent injury to their employees would result in a multiplicity of actions out of the same tortious act. The overwhelming majority of people in today's society are employed, and thus for nearly every injury another possible claim and another possible party would become a factor in the average lawsuit. Disputes would arise surrounding the alleged failure to mitigate damages through employment of an underqualified individual or payment of excessive wages. Expert testimony of an economist would be required in an attempt to pin down the probable future profit rates of the corporation and how those had been affected by the loss of the employee. Expert medical testimony would be required to establish how long the employee would be absent from work, if he would be able to return, and how his future productivity would be affected by the injury.

Thus, already overloaded court dockets and burgeoning litigation costs would be augmented by the recognition of the action, all to prevent any loss of profits from being passed on to consumers. Will this result in a benefit to society at large? We think not. Most judgments, as well as litigation costs, will be paid by insurance companies. Insurance companies will pass on these costs to their insureds in the form of higher insurance premiums. Consequently, society would bear both the cost of the economic injury and the cost of litigating that injury. Overcrowded dockets would further burden society, costing more tax dollars and causing extended delay of pending litigation.

In summary, the rationale underlying the action for loss of services of a negligently injured employee is outmoded, the policy reasons for adopting it are dubious, and its basis in Indiana law is nonexistent. We are disinclined to adopt a cause of action which has been rejected by every modern court which has addressed it, including that of the country of its origin.[3]

We conclude that the trial court should have granted Morton's motion to dismiss Merrillville Toyota's claim for loss of Marino's services due to the negligence of a third party. Accordingly, we reverse and remand to the trial court with instructions that the motion to dismiss be granted.

HOFFMAN, P.J., and CONOVER, J., concur.

3. Our failure to recognize this action does not affect the right of an employer to bring an action for *intentional* interference with a contractual relationship. For the elements of such an action, see *Neterer v. Slabaugh* (1990), Ind. App., 548 N.E.2d 832, 834, *transfer denied.*