[788 NYS2d 71]

BARRY & SONS, INC., Doing Business as BLACKGROUND RECORDS, Respondent, v INSTINCT PRODUCTIONS LLC, Appellant, et al., Defendants.

First Department, January 6, 2005

## APPEARANCES OF COUNSEL

*Brown Gavalas & Fromm LLP*, New York City (*David H. Fromm* and *Frank J. Rubino, Jr.* of counsel), for appellant.

*Nixon Peabody LLP*, New York City (*Frank H. Penski, Frank W. Ryan* and *Erika J. Duthiers* of counsel), for respondent.

## OPINION OF THE COURT

SULLIVAN, J.

This is an appeal from an order sustaining the sufficiency of a complaint seeking damages for the destruction of a business agent's "principal asset," the rhythm and blues vocalist Aaliyah Dana Haughton, known professionally as Aaliyah, arising out of her death in an airplane accident, alleged to have been caused by defendant's negligence in arranging for her transportation from the filming of a music video.

Plaintiff Barry & Sons, Inc., doing business as Blackground Records, was formed in 1992 to develop, promote and capitalize on the musical talents of Aaliyah, and to oversee the production and distribution of her records, tapes and music videos. In 1998, Blackground entered into a recording agreement with Aaliyah that provided for her to make multiple recordings and music videos for Blackground. In August 2001, Blackground entered into a contract with Instinct Productions LLC calling for Instinct, for a fee to be paid by Blackground, to produce a music video entitled "Rock the Boat." Aaliyah was killed on August 25, 2001 in the crash of an airplane chartered by Instinct in connection with the production of this video. Blackground brings this action against Instinct for damages it sustained on account of Aaliyah's death.

After Aaliyah's death, her parents, individually and as representatives of her estate, brought a wrongful death action in California against Instinct and several other parties. This action was settled on or about October 31, 2003; by the terms of the settlement agreement, Instinct and the other named defendants were released from all claims relating to Aaliyah's death. On November 5, 2003, five days after the settlement of the California wrongful death action, Blackground commenced this action against Instinct and others, seeking damages "in the millions of dollars" for the loss of "current and future profits" on "account of the death of Aaliyah."

In its amended complaint, Blackground asserts four causes of action: the first, for a declaratory judgment for Instinct's failure to perform its contractual obligations in that it agreed to be responsible for any loss or damage in connection with the production of the video, is essentially a breach of contract claim; the others, against Instinct and its principals, allege that the Instinct, based on a long, close and trusting professional and personal relationship with Blackground and its principal, Aaliyah's uncle, owed a duty to Blackground, separate and apart from its contractual obligations, to "use reasonable care in selecting the mode of transportation to transport . . . Aaliyah," and that Instinct's negligence in failing to arrange for such safe and reliable passage was the proximate cause of her death.

Instinct moved, pre-answer, to dismiss the complaint pursuant to CPLR 3211 (a) (7) for failure to state a cause of action, arguing that an employer has no right to recover damages resulting from the death of an employee or key personnel caused by another. Blackground opposed the motion, arguing, inter alia, that it was not suing for wrongful death but, rather, for Instinct's negligence resulting in severe harm and loss to it, and that the courts should recognize an exception to the bar against an employer's suing for the wrongful death of an employee or key personnel in a case where, as here, the parties had a "long, close and trusting personal relationship," tantamount to a fiduciary one.

Supreme Court granted Instinct's motion to the extent of dismissing Blackground's first cause of action for a declaratory judgment, from which Blackground does not appeal. As the court explained, paragraph 4 (e) of the video agreement was a "standard third-party indemnification clause written to protect Blackground from third-party claims arising out of the production of the 'Rock the Boat' video, and not to provide Blackground with a basis to assert a first-party claim against Instinct." (5 Misc 3d 172, 181 [2004].) As to the negligence claim, the motion court, acknowledging the rule barring an employer from recovering damages when one of its employees is injured as a result of a third party's negligence (*see Ferguson v Green Is. Contr. Corp.*, 36 NY2d 742 [1975]), found that the rule did not apply because the complaint did not allege any of the control factors under Labor Law § 190 (3) that are essential for a finding of the existence of an employer/employee relationship between Blackground and Aaliyah. Instead, the court, citing *Laird v United States* (556 F2d 1224 [5th Cir 1977], *cert denied*

434 US 1014 [1978] [professional football players' contracts represent independent and uniquely valuable assets to professional football franchises]) and *KFOX, Inc. v United States* (510 F2d 1365 [Ct Cl 1975] [as to professional sports teams, athletes and their contracts are at the heart of profitability]), found that, as alleged in the complaint, Aaliyah was Blackground's "primary asset." (5 Misc 3d at 184.) Thus, Supreme Court held, Blackground was not improperly asserting, in the guise of a negligence claim, a cause of action for wrongful death, but rather an "ordinary negligence claim seeking recovery for damages allegedly arising out of the negligent destruction of a valuable property asset." (*Id.* at 185.)

Instinct appeals, arguing that, however styled, Blackground's complaint is a wrongful death action in violation of well-established precedent, public policy and statutory provision. Noting that there is no common-law right to maintain a wrongful death action (*see Carrick v Central Gen. Hosp.*, 51 NY2d 242, 249-250 n 2 [1980]) and that the right to maintain such an action is purely a creature of statute (*Liff v Schildkrout*, 49 NY2d 622, 632 [1980]; *see* EPTL 5-4.1) that may be brought only by the personal representative of a decedent survived by distributees, which Blackground is not, Instinct asserts the complaint must be dismissed. We agree.

The courts have uniformly held that a company may not sue in negligence for damages arising out of the death of another\* (*see e.g. Arrow Elecs. v Stouffer Corp.*, 117 Misc 2d 554 [1982] [corporation may not recover damages for deaths of 13 employees who perished in hotel fire]; *Bowen v Pan Am. World Airways, Inc.*, 474 F Supp 563 [SD NY 1979] [company could not maintain action for damages for death of general manager arising out of airplane accident]; *Lusby v Union Pac. R.R. Co.*, 4 F3d 639, 642 [8th Cir 1993] [no damages recoverable for death of employee who was a "unique economic asset"]; *Trump Taj Mahal Assoc. v Costruzioni Aeronautiche Giovanni Agusta, S.p.A.*, 761 F Supp 1143, 1148, 1161-1162 [D NJ 1991], *affd* 958 F2d 365 [3d Cir 1992], *cert denied* 506 US 826 [1992] [recovery barred for deaths of "key employees"]; *Von Batsch v American Dist. Tel. Co.*, 175 Cal App 3d 1111, 1117, 222 Cal Rptr 239, 241 [1985] [no recovery for death of "key employee"]; *Harris Corp., Data Communications Div. v Comair, Inc.*, 510 F Supp 1168, 1170 [ED Ky

---

\* Nor may an employer sue for damages when one of its employees is injured (*see Ferguson v Green Is. Contr. Corp.*, 36 NY2d 742 [1975], *supra*).

1981], *affd* 712 F2d 1069 [6th Cir 1983] [no recovery for death of "valued employee"]).

The rationale for the rule is obvious. New York, as do most states, refuses to recognize a common-law cause of action for wrongful death (*see e.g. Carrick,* 51 NY2d at 249-250 n 2; *Ratka v St. Francis Hosp.,* 44 NY2d 604, 610 [1978]). As the Court of Appeals stated in *Liff* (49 NY2d at 632):

> "The courts have deferred to the wisdom of the Legislature in striking the sensitive balance as to the causes of action which should be permitted to be maintained due to the wrongful death of another and also the measure of damages recoverable. (See *Mobil Oil Corp. v Higginbotham,* 436 US 618, 623-626.) In short, legislative enactments have pre-empted this area; the rights accorded by statute being in derogation of the common law, the right to sue for injury sustained due to the death of another must be founded in statutory authority."

EPTL 5-4.1, New York's wrongful death statute, is the exclusive statutory mechanism for a wrongful death action, defined as one "to recover damages for a wrongful act, neglect or default which caused the decedent's death against a person who would have been liable to the decedent by reason of such wrongful conduct if death had not ensued." (EPTL 5-4.1 [1].) As noted, the statute provides that such actions may only be brought by the personal representative of the decedent who is survived by distributees. In alleging that Instinct was negligent in failing to arrange safe transportation for Aaliyah and seeking damages for lost profits as a result of her death, Blackground is simply seeking damages for her alleged wrongful death in contravention of the statute. As Blackground is not the "personal representative . . . of [the] decedent" (EPTL 5-4.1 [1]), it lacks standing to bring such a claim. Furthermore, it should be noted, EPTL 5-4.4 (a) provides that wrongful death damages are for the exclusive benefit of the decedent's distributees, which do not include Blackground. Thus, it has no right to damages arising out of Aaliyah's death.

Ignoring well-settled law that, outside the authorization granted by EPTL 5-4.1, one may not sue for the death of another, Supreme Court held that, given Blackground's allegation that Aaliyah was its "primary asset," the negligence action was not, in reality, a wrongful death action. The facile complaint allegation that Aaliyah was its primary asset does nothing to

dispel the obvious—that Blackground's claims assert nothing more than a wrongful death action. As the court noted in *Trump Taj Mahal Assoc.* (761 F Supp at 1161),

> "Plaintiffs argue that their claim is not a wrongful death action because their link to their employees is contractual, not familial. Plaintiffs here attempt to transform what is a bar to their recovery into the means to redefine their claim and so avoid the bar. However, that they do not have the statutorily mandated link to the deceased which would entitle them to recover under the wrongful death statute does not alter the fact that this action is grounded in the allegedly wrongful death of their employees. Plaintiffs' 'contractual obligations' . . . along with their damages, all arose from the ashes of 'that fiery helicopter crash' that killed their employees. However described by plaintiffs, this is a wrongful death action."

That Aaliyah was not an employee of Blackground does not, as it argues, require a different result. The public policy underlying the rule is equally applicable to independent contractors. What is significant is that Blackground seeks to recover economic damages. Under Blackground's analysis, it is essentially asserting a claim for negligent interference with contractual relations, a theory of liability not recognized in New York (*see Alvord & Swift v Muller Constr. Co.,* 46 NY2d 276, 281 [1978]; *Rosario-Suarz v Wormuth Bros. Foundry,* 233 AD2d 575, 578 n 2 [1996] ["Although tortious interference with contract is a recognized tort in this State, such interference must be intentional, as opposed to merely negligent"]).

Public policy considerations also militate against recognition of a cause of action for the death of key personnel. As the Court recognized in *Ferguson v Green Is. Contr. Corp.* (44 AD2d 358, 360 [1974], *affd* 36 NY2d 742 [1975], *supra*), "should the cause of action pleaded in this case become judicially sanctioned, it would be nearly impossible to protect against a proliferation of claims both real and fraudulent." Similarly, in *Harris Corp.* (510 F Supp at 1172):

> "As a practical matter, if a person is injured or killed under such circumstances that there would be a right to recover against the tortfeasor, there is usually only a limited amount of resources to compensate him or his survivors. That is true in the case at

bar as in most cases. The policy of the common law and the wrongful death acts is to give the sole right to make a claim against those resources to the injured person and his spouse, if he survives, and to the survivors named in the wrongful death act in the event of death.

"There are many people who may suffer economically or psychologically from the death of an individual. He may be a good customer at some place of business. He may contribute regularly to worthy causes. His friends may grieve for him perhaps more than his relatives. Yet, the law limits the right to recover for injury to himself or those having a special relationship with him in the eyes of the common law, and, in the event of death, to those named in the wrongful death act.

"This is a wise course because, if recovery could be had by all who are injured in fact, the resources available to compensate an injured person or the survivors of a deceased person would be diluted. Also, the settlement of claims would be extremely difficult in that a tortfeasor or his insurer would have no way to know how many claims might be brought, or from whom to obtain releases."

In the instant matter, Aaliyah's personal representatives, on behalf of her distributees (her parents) have, in fact, brought and settled the California wrongful death action. In settling that action, Aaliyah's distributees have been compensated for the damages resulting from her death. Permitting Blackground's claim would expose Instinct to the risk of paying the same damages a second time. And, if Blackground is allowed to recover for the wrongful death of Aaliyah, what is to prevent others who anticipated profits from the talents of Aaliyah from bringing a negligence action on account of her death? Allowing tangentially injured parties to bring wrongful death actions would, as the Third Department noted in *Ferguson* (44 AD2d at 360), lead to a proliferation of litigation and, to the detriment of the decedent's survivors, create unlimited liability for entities sought to be held liable for wrongful death.

Instinct, with fixed and limited resources, no doubt would not have settled the California wrongful death action as it did had it known that it might also have to compensate Blackground for its lost profits. Allowing contractually related and other remote

parties like Blackground to recover damages for wrongful death could only lessen the amount of funds available to compensate the decedent's dependent survivors. And, permitting such a lawsuit to proceed would further subject the overburdened courts to frivolous lawsuits.

Supreme Court's determination that Aaliyah was not an employee of Blackground as defined by article 6 of New York's Labor Law is, of course, beside the point. Whether, at the time of her death, Aaliyah was an employee of Blackground is totally irrelevant as to whether Blackground may maintain a wrongful death action. The EPTL bar to the assertion of such an action in New York by anyone other than the personal representative of the decedent applies equally to contractors as well as employers.

Nor will Supreme Court's holding that Aaliyah was a "property asset" support a cause of action for negligence in causing her death. The concept that a person is a property asset of another is, of course, abhorrent to modern day thinking. Courts almost universally reject the antiquated proprietary view of the master/servant relationship (*see e.g. Myrurgia Perfumes v American Airlines,* 68 Misc 2d 712, 713 [1971]; *Gonzalez v Yancey,* 939 P2d 525 [Colo App 1997]; *Cravens/Pocock Ins. Agency, Inc. v John F. Beasley Constr. Co., Inc.,* 766 SW 2d 309 [Tex App 1989]; *see also Ferguson v Green Is. Contr. Corp.,* 36 NY2d 742 [1975], *supra*).

We have examined Blackground's other arguments and find them without merit.

Accordingly, the order of the Supreme Court, New York County (Carol Edmead, J.), entered June 4, 2004, insofar as it denied defendant Instinct Productions LLC's motion pursuant to CPLR 3211 (a) (7) to dismiss the negligence claim against it, should be reversed, on the law, with costs and disbursements, and the motion granted. The Clerk is directed to enter judgment in favor of defendant Instinct Productions LLC dismissing the complaint as against it.

ANDRIAS, J.P., MARLOW and ELLERIN, JJ., concur.

Order, Supreme Court, New York County, entered June 4, 2004, reversed, on the law, with costs and disbursements, and defendant-appellant's motion to dismiss the negligence claim against it granted. The Clerk is directed to enter judgment in favor of defendant Instinct Productions LLC dismissing the complaint as against it.